GRAMBY ANDREW HANLEY, SR., APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 11309

March 20, 1981                    624 P.2d 1387

*Paul H. Schofield,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General; *Robert J. Miller,* District Attorney, and *James N. Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

On March 2, 1978, several days into a jury trial in which he was being tried for murder and kidnapping, appellant Gramby Andrew Hanley, Sr., decided to plead guilty to murder in the first degree. On that day there was presented to the court a written "plea agreement," approved by Hanley's counsel and signed by Hanley, in which it was agreed that Hanley would "plead guilty to Count Two of the Information filed in the above-entitled case, the degree of the crime specifically to be Murder of the First Degree. . . ." In exchange for such a plea, the district attorney agreed that kidnapping charges against Hanley would be dismissed.

At the time set for entry of judgment and sentencing, April 25, 1978, Hanley himself addressed the court and made a request to withdraw the agreed-to plea of guilty entered on March 2. His request was made on the ground that he was "forced" into a plea of guilty by reason of a state of mind at the time of the plea which was brought about by conditions in the Clark County jail and aggravated by his wife's having been assaulted on the third day of trial.

When inquiry was made as to how he claimed to have been forced into a plea of guilty, Hanley responded by saying that he suffered from a "detachment from reality" which was "similar to brainwashing."

The court rather summarily dismissed this request, noting that such possibilities had been carefully gone into at the plea hearing. The court recalled that at the plea hearing Hanley "appeared to be lucid and in full control of his facilities (sic)."

After denying the request for change of plea and after hearing from Hanley's counsel and from Hanley himself, the court, at the conclusion of the April 25 hearing, sentenced Hanley to life imprisonment without possibility of parole. Formal judgment of conviction with accompanying sentence was filed on May 3, 1978.

After judgment and sentencing, Hanley filed a number of post-conviction motions and a petition for writ of habeas corpus, all going to the same issue: whether or not defendant

knowingly, voluntarily and understandingly entered his plea of guilty to murder in the first degree. Claims of coercion and "brainwashing" were not pursued below and are not urged in this appeal.

This court has held in Higby v. Sheriff, 86 Nev. 774, 476 P.2d 959 (1970), in harmony with the United States Supreme Court decision, Boykin v. Alabama, 395 U.S. 238 (1969), that in cases where a guilty plea is accepted, the "record should affirmatively show" that certain "minimal requirements" are met. These are, generally:

1. An understanding waiver of constitutional rights and privileges,

2. Absence of coercion by threat or promise of leniency,

3. Understanding of consequences of the plea, the range of punishments, and

4. An understanding of the charge, the elements of the offense.

The first two of these "requirements" are not issues in this appeal. Appellant claims that the second two requirements, understanding of the consequences of his plea and understanding of the charge, have not been met.

Such requirements are codified in NRS 174.035(1) which prohibits the court's acceptance of a guilty plea "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea."

With regard to understanding of the consequences of the plea and the range of punishment following therefrom, appellant was asked at the time of entry of plea on March 2, 1978: "Then you do understand that by virtue of your plea of guilty today, that the Court could impose a sentence of up to life imprisonment without the possibility of parole?" Hanley's answer to this question was: "I am fully aware of it." Under such circumstances, this court simply cannot find that Hanley did not understand the range of punishment. He certainly understood the maximum,[1] and that maximum became his ultimate sentence. If there were any failure of understanding in this case, it was not in relation to the possible penalty.

---

[1] Appellant claims error because at the time "the range of punishments for murder in the first degree included not only life in prison with the possibility of parole or without the possibility of parole, but also included the death sentence if aggravating circumstances were found." Because of

The most substantial point raised by appellant is his claim that the "court failed to ascertain defendant Hanley's understanding of the nature of the charge itself and particularly the elements of the crime of first degree murder."

In discussing this point, we adopt principles declared in Henderson v. Morgan, 426 U.S. 637 (1976), cited and relied on by Appellant in both of his briefs. The United States Supreme Court[2] recalled in *Henderson* the long-accepted principle that a guilty plea must provide a trustworthy basis for believing that the defendant is in fact guilty. Thus, the "constitutional rule relevant" to such cases is "that the defendant's guilt is not deemed established by entry of a guilty plea, unless he either admits that he committed the crime charged, or enters his plea knowing what the elements of the crime charged are."

We accept this "constitutional rule" and hold that unless appellant either (1) admitted that he committed the crime charged, first degree murder, or (2) that he entered the plea knowing what the elements of this crime were, the plea must be set aside.

There is no evidence in this record that at the time of the entry of his plea, appellant had been canvassed in order to determine if he knew what the elements of first degree murder were. In the course of the court's canvass appellant's *attorney* was asked if he had explained to appellant "the elements of the crime with which he is charged in Count II of the Information in this case?" Counsel replied in the affirmative, and this was followed by questions to the appellant as to whether he had such discussions with his attorney and whether he understood what his attorney was saying to him. His answer to the court was that "yes" he had had such discussions, that he understood what was said to him and that he had no further questions in the matter.

There was no mention of murder in the first degree or any other crime in this portion of the canvassing; there was no mention of the "elements" of first degree murder or any other crime; there was no statement as to what, if anything, was explained, nor what, if anything, the defendant understood as

---

this Appellant contends that he was not advised of the range of punishment. If evidence of aggravating circumstances had been thereafter introduced and the death penalty assessed, certainly appellant would have a cognizable grievance. Under cited circumstances, we see no legitimate complaint on this score.

[2]Concurring opinion of White, Stewart, Blackman and Powell, JJ., pp. 648-649.

a result of such explanation. As a showing that defendant under the stated circumstances knew or understood what the elements of the crime he was pleading to were, the record is completely deficient.

Any claimed showing of an "understanding" on the part of the appellant of "the elements of the crime with which he is charged" is further complicated by the fact that first degree murder can be committed in any of three distinct and separable ways; that is, by (1) commission by poison, or lying in wait, torture, or any other kind of willful deliberate and premeditated killing; (2) commission in the perpetration or attempted perpetration of sexual assault, kidnapping, arson, robbery, burglary or sexual molestation of a child under the age of 14 years, or (3) commission to avoid or prevent lawful arrest. NRS 200.030. A complex of questions thus arises: What was explained? What elements? What did he understand? Answers to such questions certainly are not "affirmatively shown" in this record.

Although we have disclaimed the necessity for "articulation of talismanic phrases," Heffley v. Warden, 89 Nev. 573, 516 P.2d 1403 (1973), in plea hearings and have declined to "impose upon our trial judges the rigid requirements imposed upon federal judges when pleas are taken under Federal Rules Criminal Procedure, rule 11, Wynn v. State of Nevada, 96 Nev. 673, 615 P.2d 946 (1980), we would hold that constitutional requirements and the statutory requirement of NRS 174.035(1) demand *either* a showing that the defendant himself (not just his attorney) understood the elements of the offense to which the plea was entered *or* a showing that the defendant, *himself,* has made factual statements to the court which constitute an admission to the offense pled to.[3]

Since there is no adequate showing of an understanding of

---

[3] In *Henderson,* supra, the concurring opinion of White, Stewart, Blackman and Powell, JJ., expresses a refusal to "permit a guilty plea to be entered against the defendant solely on the consent of defendant's agent—his lawyer. Our cases make absolutely clear that the choice to plead guilty must be the defendant's: it is *he* who must be informed of the consequences of his plea and what it is that he waives when he pleads. *Boykin v. Alabama,* 395 U.S. 238 (1969); and it is on his admission that he is in fact guilty that his conviction will rest." ((426 U.S. at 650); emphasis in original.) Simply to take the attorney's "word" that the elements of the criminal offense had been dutifully explained does not seem to abide by these principles nor comply with the statutory requirement that the defendant be addressed "personally" concerning the "nature of the charge."

the charge and particularly an understanding of the elements of the offense, we must look to see whether or not the record shows that the appellant admitted commission of the crime charged. It seems that he did.

We note that Appellant signed a plea agreement formally agreeing to plead guilty to first degree murder. Hanley's present, appellate counsel tells us: "Effectively, MR. HANLEY admitted to kidnapping Mr. Bramlet. . . ." (although he stated that he had nothing to do with shooting him.) At the March 2, 1978 plea hearing, in response to the deputy district attorney's questioning, Mr. Hanley tells us: "And I was at McCarran Airport, and I did abduct Al Bramlet * * * I stuck a gun in his back and warned him that if he resisted, I would shoot him." During the course of the kidnapping activity, Hanley "became aware" the "Mr. Bramlet was not going to be allowed to go back to town." Hanley testified that he heard the gunshots and was thereafter, with the aid of one of the other abductors, engaged in "undressing Mr. Bramlet and moving his body." Next Hanley "began to secrete, seclude it (Bramlet's body) by means of placing stones over it. . . ."

We find the foregoing to constitute a very clear admission to first degree murder, "committed in the perpetration . . . of . . . kidnapping. . . ." as defined by NRS 200.030, in effect at the time of commission of the offense.

As a consequence of the admissions made by appellant during the canvassing process at his plea hearing, we must find that his plea was entered knowingly, voluntarily, understandingly and in conformity with constitutional and statutory requirements.

We do not see from this record that appellant was ever deprived of effective counsel and reject his contention that the delay in granting an evidentiary hearing placed him in a "perilous paradoxical" position. If there be any error here, it is not substantial or prejudicial.

Appellant also claims that his agreement to plead guilty was made on the basis of some parole understanding and reliance that the prosecutor would stand mute during sentencing.

The only corroborating evidence presented by Hanley to support this contention at the evidentiary hearing was a letter purportedly sent by Hanley and his father to their attorney on March 8, 1978. His father testified that the prosecution had promised to stand mute. However, this testimony was stricken.

Hanley's former attorneys testified at the evidentiary hearing that the state had "absolutely not" agreed to stand silent. The

deputy district attorney who negotiated the agreement testified that it was made clear to Hanley that the State reserved the right to argue. The plea agreement which was signed by Hanley states that "the State reserves the right to argue at the time of sentencing." Even if Hanley mistakenly believed that the State would stand mute, it is not sufficient to invalidate the plea as unknowing. Rouse v. State, 91 Nev. 677, 541 P.2d 643 (1975).

Hanley did not object to the alleged plea bargain violation during the sentencing hearing, thereby waiving any rights of appeal on this issue. Bishop v. Warden, 94 Nev. 410, 581 P.2d 4 (1978).

The final point made by appellant is that the deputy district attorney's remarks at sentencing were so improper as to require reversal.

The State furnished Hanley with a copy of the presentence report three and one-half hours before the hearing. The case at bar is distinguished from U.S. v. Woody, 567 F.2d 1553 (5th Cir., 1978), relied on by appellant, because in that case undisclosed portions of the presentence report were unauthorized under Federal Rules Criminal Procedure, rule 32(c)(3).

The presentence report is omitted from the record on appeal thereby precluding its review by this court. See Jacobs v. State, 91 Nev. 155, 532 P.2d 1034 (1975).

At the conclusion of the evidentiary hearing, the judge who had imposed sentence stated that when he was determining sentence, he tried to justify a lesser sentence but was unable to do so because of Hanley's criminal history. No mention was made of the impact of the district attorney's argument at sentencing.

Since there is no indication of any such impact from the record as it stands without the presentence report, this court may refrain from interfering with the sentence imposed. Silks v. State, 92 Nev. 91, 545 P.2d 1159 (1976).

In all respects, the judgment of the district court is affirmed.

GUNDERSON, C. J., and MANOUKIAN, BATJER, and MOWBRAY, JJ., concur.