EDWARD THOMAS WILSON AND JOHN STEVEN OLAUSEN, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 12346

JOHN STEVEN OLAUSEN AND EDWARD THOMAS WILSON, APPELLANTS, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 13267

May 10, 1983 664 P.2d 328

[Rehearing granted August 24, 1983, for a limited purpose.]

*David G. Parraguirre,* Acting Washoe County Public Defender, and *N. Patrick Flanagan,* Special Deputy Public Defender, Reno, for Appellant Olausen.

*Fred H. Atcheson,* Reno, for Appellant Wilson.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,* District Attorney, and *Edward B. Horn,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MANOUKIAN, C. J.:

Appellants pleaded guilty to murder, robbery with the use of a deadly weapon, and kidnapping with the use of a deadly weapon. A penalty hearing was held, after which a three judge panel sentenced appellants to death.[1] Subsequently, appellants moved to withdraw their guilty pleas. The lower court denied their motions and appellants appealed from the denial of their motions, from the judgment of conviction and from the imposition of the death penalty. Appellants proffer several grounds for reversal. For reasons hereinafter set forth, however, we find no reversible error and affirm.

1. *The Facts.*

In the afternoon of June 24, 1979, Officer James Hoff of the Reno Police Department, posing as a narcotics dealer, met with appellant Wilson to discuss a drug transaction in which Wilson was to sell Hoff ten ounces of cocaine for $16,000. During the meeting, Wilson and Hoff made arrangements for the sale to take place that night around midnight. Later in the day, Wilson, along with appellant Olausen, approached David Lani and Fred Stites and told them that they were making a drug deal and that they wanted to murder the dealer. Wilson then asked Lani and Stites to assist in the murder. The four proceeded to discuss how and where the killing could be done. Lani told the group that he knew a place by the Riverside Convalescent Center where the killing could take place. They then devised a plan to kill Hoff because they wanted to take the money and they did not want any witnesses.

All four purchased baking powder as a substitute for the cocaine. Later on in the evening they placed the baking powder and three knives in a duffel bag and walked to the Convalescent Center. Once there, they cut and gathered bushes under which

---

[1]NRS 175.552 provides:

> Upon a finding that a defendant is guilty of murder of the first degree, the court shall conduct a separate penalty hearing to determine whether the defendant shall be sentenced to death or to life imprisonment with or without possibility of parole. The hearing shall be conducted in the trial court before the trial jury, or before a panel of three district judges if the trial was without a jury, as soon as practicable.

to hide when Wilson returned with Hoff. Wilson then left the area to contact Hoff. Meanwhile, the other three remained at the Convalescent Center where they hid in the bushes, each armed with a knife.

On June 25th at 12:10 a.m., Hoff met Wilson at the El Tavern Motel in Reno. Before this meeting, Hoff had obtained $16,000 in $100 bills which were photocopied and their serial numbers recorded. Then Hoff and another officer installed a Kel listening device on Hoff's vehicle. Finally, numerous surveillance teams were dispatched throughout the area to observe the transaction. Unfortunately, shortly after Hoff met Wilson, the listening device malfunctioned; therefore, both audio and visual contacts were lost on several occasions throughout the night.

After the rendezvous, Hoff and Wilson drove around Reno until approximately 1:30 a.m., at which time Hoff parked the car in a wooded area near the Riverside Convalescent Center. As Hoff and Wilson got out of the car, Lani jumped out of the bushes and stabbed Hoff in the back. The others came out of their hiding places and together stabbed Hoff an additional eight times. About fifteen minutes later, the vehicle left the wooded area at a high rate of speed heading west toward Verdi, Nevada.

The vehicle was lost by the surveillance teams somewhere near Verdi and it was not spotted again until approximately 3:15 a.m. At that time, backup units were called in to stop the car. Nevertheless, the car was not found until much later. It was unoccupied and stained with blood.

After discovery of the automobile, a search for Hoff and the suspects was initiated. In the afternoon of June 25th, appellants were found sleeping in some bushes alongside a trailer park. On the ground between appellants, officers found a vest containing $1,670. Fourteen of the sixteen hundred dollar bills in the vest matched those photocopied by Hoff. Wilson and Olausen were immediately placed under arrest. A few hours later, officers found the body of James Hoff buried under a pile of rocks in a drainage ditch in Verdi, Nevada. Stites and Lani were subsequently arrested in Oklahoma. They were returned to Nevada, after which all four defendants pleaded guilty.[2]

2. *The Guilty Pleas.*

In Higby v. Sheriff, 86 Nev. 774, 476 P.2d 959 (1970), we concluded that certain minimum requirements must be met

---

[2]Lani and Stites were sentenced to life in prison without the possibility of parole for their involvement in the killing of Hoff and are not involved in this appeal.

when a judge canvasses a defendant regarding the voluntariness of a guilty plea. We held that the record must affirmatively show the following: (1) the defendant knowingly waived his privilege against self-incrimination, the right to trial by jury, and the right to confront his accusers; (2) the plea was voluntary, was not coerced, and was not the result of a promise of leniency; (3) the defendant understood the consequences of his plea and the range of punishments; and (4) the defendant understood the nature of the charge, *i.e.,* the elements of the crime. *Id.* at 781, 476 P.2d at 963. As to this last requirement, we subsequently held that in order for the record to show an understanding of the nature of the charge it is necessary that there be either a showing that the defendant himself understood the elements of the offense to which the plea was entered or a showing that the defendant has made factual statements to the court which constitute an admission to the pleaded to offense. Hanley v. State, 97 Nev. 130, 135, 624 P.2d 1387, 1390 (1981). In the instant case, the record demonstrates that the district judge fully complied with the requirements of *Higby* and *Hanley* by conducting a thorough canvass of Olausen and Wilson before accepting their pleas. Nevertheless, both appellants contend that their pleas were not freely and voluntarily entered. We will discuss the claims of each appellant separately below.

Shortly after Olausen's arrest, the chief criminal deputy district attorney for Washoe County informed Olausen that the District Attorney's Office would not seek the death penalty if he told the authorities the whereabouts of James Hoff. Olausen accepted this bargain. As Olausen directed the authorities toward Verdi, however, an announcement came over the police radio that Hoff's body had been located. Although the District Attorney did not feel that he was legally obligated to keep the promise of his deputy, he agreed that he would not affirmatively seek the death penalty against Olausen in order to support the integrity of his office. Olausen first contends that the District Attorney's demeaning treatment of his own promise and his aggressive argument at the penalty hearing violated the implicit terms of the plea agreement. We disagree.

Without citing any authority, appellant argues that the District Attorney breached the agreement when he stated that he would not seek the death penalty but that he was only doing so to support the integrity of his office. Because Olausen has cited no authority in support of this contention, we need not consider it. Plankinton v. Nye County, 95 Nev. 12, 588 P.2d 1025

(1979). Nevertheless, due to the gravity of the offense and consequent penalty, we are constrained to address the claim. A similar argument was made in Bergman v. Lefkowitz, 569 F.2d 705 (2d Cir. 1977). There, the appellant claimed that the prosecutor breached his promise when he ''grudgingly'' made the sentence recommendation he had promised. In holding that such an attitude did not violate the prosecutor's promise, the court in *Bergman* stated:

> We perceive no dispositive significance in this. In almost all cases where a prosecutor agrees in a plea bargain to make a sentence recommendation, he is recommending not what he wants but something less, which the agreement requires. This is the very essence of the bargain and the sentencing judge is well aware of it.

*Id.* at 714. We find the reasoning in *Bergman* applicable to the instant case.

Olausen also contends that the prosecutor's aggressive argument and his presentation of aggravating circumstances violated the implicit terms of the agreement; for support Olausen relies primarily on the case of Commonwealth v. Alvarado, 276 A.2d 526 (Pa. 1971). In *Alvarado* the prosecutor promised not to seek the death penalty if the accused pleaded guilty to rape and murder. The accused claimed that the prosecutor breached the agreement when he reviewed the aggravating circumstances and argued the viciousness of the crime and the accused's lack of remorse. The Supreme Court of Pennsylvania agreed with the accused in holding that the state had breached its promise by making damning statements at the time of sentencing. Accordingly, the court vacated the sentence of death and sentenced Alvarado to life in prison.

*Alvarado,* However, is readily distinguished from the instant case. In reaching its decision, the *Alvarado* court reasoned:

> To determine the content of the plea bargain we must consider what the defendant might have reasonably interpreted it to be. (Citation omitted.) Here, Alvarado might have reasonably believed that the prosecutor's promise not to seek the death penalty included a commitment not to make any damning or even potentially damning statements at the time of sentencing. As so interpreted, that promise was clearly violated.

*Id.* at 529. In the case before us, Olausen could not have possibly interpreted the District Attorney's promise not to affirmatively seek the death penalty as including a commitment not to

argue aggravating circumstances. Throughout the canvass, Olausen was repeatedly informed that, even though the District Attorney was not affirmatively seeking the death penalty, he was not precluded from presenting and arguing aggravating circumstances. Furthermore, the lower court continually warned Olausen that, even though the death penalty was not being sought, the three judge panel was not bound by any promises and it could impose the death penalty in light of the aggravating circumstances that would be presented at the penalty hearing. On numerous occasions, Olausen stated that he was fully aware of the extent of the promise, that he understood the District Attorney would be able to present aggravating circumstances and that a sentence of death was still a possibility.

During his closing remarks, the District Attorney specifically reminded the sentencing panel of his promise by stating:

> Now, I would like to turn just for a minute to Olausen with regard to the death penalty. I have already discussed the fact that we did make a promise not to seek the death penalty. I do not want anything that I say to be interpreted as seeking the death penalty. I am not seeking the death penalty against Mr. Olausen.

The District Attorney then closed his argument by asking for death for the other three defendants. At no time did he ask that the death penalty be imposed on Olausen. Under these circumstances, we cannot say that the District Attorney breached his promise not to affirmatively seek the death penalty even though he did argue aggravating circumstances, nor can we say that Olausen's plea was not freely and voluntarily entered.[3]

Finally, Olausen contends that the District Attorney violated the plea bargain by filing a "Notice of Intent to Seek the Death Penalty" against all the defendants, including Olausen. The notice also contained five aggravating circumstances which the District Attorney planned to present during the penalty hearing. Although the Notice of Intent to Seek the Death Penalty is not required by statute, the Washoe County District Attorney's Office routinely files such a document in order to comply with

---

[3]Indeed, \ ͵ believe the District Attorney would have been remiss had he not presented aggravating circumstances. In addition to the death sentence, there remained the potential sentences of life with the possibility of parole and life without. If the District Attorney had not argued as aggressively as he did, the three judge panel could have handed down a sentence of life with the possibility of parole for which parole eligibility begins in ten years.

the provisions of NRS 175.552.[4] Olausen cites Santobello v. New York, 404 U.S. 257 (1971), in support of his claim.

The accused in *Santobello* entered into a plea bargain with the District Attorney whereby he agreed to plead guilty to two counts on the District Attorney's promise not to make a recommendation as to sentence. During sentencing, however, another prosecutor replaced the prosecutor who had negotiated the plea. The new prosecutor, unaware of the bargain, recommended the maximum sentence. In vacating the judgment and remanding the case for resentencing, the United States Supreme Court stated:

> This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 262.

The record before us leaves no doubt that the District Attorney did fulfill his promise not to affirmatively seek the death penalty. During the canvassing of Olausen, which occurred before the District Attorney filed the Notice of Intent, he made of record the full extent of the plea negotiations with Olausen. As previously mentioned, the prosecution informed the court that it was not seeking death. The prosecution stated that it would argue and present aggravating circumstances and that the court was free to impose whatever sentence it deemed appropriate. Additionally, Olausen's attorney testified that he was not concerned when he received the Notice of Intent nor did he believe it had any real significance because of the extensive canvassing to which his client was subjected and because the District Attorney had already set forth the negotiations on the record during the canvassing. In addition, the District Attorney informed Olausen's attorney that his secretary had inadvertently included Olausen's name on the notice. The District Attorney assured him that the notice did not involve Olausen and that he was abiding by his promise not to seek the

---

[4]NRS 175.552 provides in relevant part:

The state may introduce evidence of additional aggravating circumstances as set forth in NRS 200.033, other than the aggravated nature of the offense itself, only if it has been disclosed to the defendant before the commencement of the penalty hearing.

death penalty. Finally, as already noted, during the penalty hearing the District Attorney specifically informed the three judge panel that he was not seeking death for Olausen and at no time during the penalty phase did he argue for it. In the context of this case, we find that the District Attorney did not breach his promise and that Olausen freely and voluntarily entered his guilty plea. Therefore, we conclude that *Santobello* is inapplicable.

We now turn to Wilson's claim that his plea was not voluntarily entered because he did not understand the consequences of his plea due to a "secret plan" between himself and his attorney. The nature of this so-called secret plan is as follows: The four attorneys for the various defendants often got together to discuss the case and strategy. Due to the overwhelming evidence of guilt, the attorneys believed that it was in the best interests of their clients to plead guilty. The attorneys believed that, if their clients pleaded guilty before the District Attorney filed the Notice of Intent, they could argue that the prosecutor was precluded from seeking the death penalty because he had not provided notice prior to the guilty pleas. According to two of the attorneys, they did not really believe that the lack of notice was a valid argument; however, they felt that it would at least create an appellate issue should the proceedings be free of error. Appellant Wilson now seeks to use the precise issue that the attorneys created to contend that he did not understand the consequences of his plea because he believed that he could not be sentenced to death since he pleaded guilty prior to the filing of the Notice of Intent. This contention is without factual support.

On numerous occasions, the lower court asked Wilson if he understood that he could be sentenced to death. Each time Wilson responded that he understood that fact. Wilson was informed that the District Attorney would be seeking the death penalty and that he would be attempting to prove various aggravating circumstances so that the death sentence could be imposed. On several occasions, Wilson stated that he understood that he could be sentenced to death, but he still wanted to plead guilty. Finally, Wilson stated that he understood that if the three judge panel did impose the death penalty there was no appeal by virtue of his guilty plea. In light of the thorough canvassing of Wilson, there is no doubt that he understood that he could be sentenced to death. Accordingly, we also find that Wilson's plea was feely and voluntarily entered.

3. *Ineffective Assistance of Counsel.*

 ██ ██

Wilson and Olausen both contend that their pleas were not entered with the effective assistance of counsel because their attorneys encouraged them to plead guilty so that they would be sentenced by a three judge panel rather than be exposed to a jury. This advice and recommendation complained of are largely tactical decisions. We have previously held that we will not second guess such matters when they relate to trial strategy. Rodriguez v. State, 91 Nev. 782, 542 P.2d 1065 (1975); Watkins v. State, 93 Nev. 100, 560 P.2d 921 (1977). "This is so even if better tactics appear in retrospect to have been available." *Id.* at 102, 560 P.2d at 922, *quoting* United States v. Stern, 519 F.2d 521, 524 (9th Cir. 1975), *cert. denied,* 423 U.S. 1033 (1975). In addition, it is a well settled rule in this state that the standard by which a claim of ineffective assistance of counsel is to be tested is whether counsel's performance was of such a low caliber as to reduce the proceedings to a sham, farce or pretense. Shuman v. State, 94 Nev. 265, 578 P.2d 1183 (1978); Sturrock v. State, 95 Nev. 938, 604 P.2d 341 (1979); Lenz v. State, 97 Nev. 65, 624 P.2d 15 (1981). Moreover, a strong presumption exists that the duties of trial counsel have been fully discharged. That presumption can only be overcome by strong and convincing proof to the contrary. Shuman v. State, *supra;* Lenz v. State, *supra;* Warden v. Lischko, 90 Nev. 221, 523 P.2d 6 (1974).

 ██

Although Wilson did express some dissatisfaction with his attorney, our review of the record reveals that both counsel performed in a competent manner and their performance did not reduce the proceedings to a sham, farce or pretense.[5] Therefore, we conclude that appellants were not denied the effective assistance of counsel.

4. *Denial of Motions to Withdraw Guilty Pleas.*

After sentencing, both appellants moved to withdraw their guilty pleas on the ground that they were not freely and voluntarily entered.[6] After conducting a lengthy evidentiary hearing,

---

[5]Furthermore, we believe that the representation afforded both appellants satisfies the less stringent test recognized by the Ninth Circuit Court of Appeals, *i.e.,* whether counsel has rendered reasonably effective assistance. *See* Cooper v. Fitzharris, 551 F.2d 1162, 1166 (9th Cir. 1977), *cert. denied,* 440 U.S. 974 (1979).

[6]NRS 176.165 provides:

Except as provided in NRS 176.225, a motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

the district court denied their motions. Appellants contend that the lower court erred in so doing. We disagree.

We have previously held "that a plea of guilty is presumptively valid." Wynn v. State, 96 Nev. 673, 675, 615 P.2d 946, 947 (1980). In addition, a district court's ruling on a motion to set aside a guilty plea is discretionary and will not be reversed unless there has been a clear abuse of that discretion. Wynn v. State, *supra;* State v. District Court, 85 Nev. 381, 455 P.2d 923 (1969). In the case before us, the record is devoid of any evidence of an abuse by the lower court. On the contrary, the district court, as previously discussed, conducted an extremely thorough canvass of both appellants in compliance with the requirements of *Higby* and *Hanley.* It is clear that Wilson and Olausen voluntarily pleaded guilty and at all times understood the consequences of their pleas. Discerning no abuse of discretion on the part of the district court, we affirm the denial of appellants' motions.

5. *Robbery as an Aggravating Circumstance.*

The three judge panel found as an aggravating circumstance that the murder was committed while defendants were engaged in the commission of a robbery with the use of deadly weapons. Appellants contend that, since the state was proceeding on the theory of felony-murder, it was error to include robbery as an aggravating circumstance. In support of their position, appellants rely on State v. Cherry, 257 S.E.2d 551 (N.C. 1979), *cert. denied,* 446 U.S. 941 (1980). There, the accused was found guilty of felony-murder. During the penalty phase, the trial court submitted the underlying felony, a robbery, to the jury as an aggravating circumstance. The North Carolina Supreme Court reversed, holding that the underlying felony should not be submitted to the jury as an aggravating circumstance when it has been used to obtain a conviction of first degree murder.

The infirmity in appellants' argument and in their reliance on *Cherry* is that appellants pleaded guilty to first degree murder upon the theories of premeditation and deliberation, as well as robbery and kidnapping.[7] Under these circumstances, other courts, including the court in *Cherry,* have held that it is permissible to use the felony as an aggravating circumstance. *See also* State v. Goodman, 257 S.E.2d 569 (N.C. 1979); *cf.* State

[7]Because we need not reach the issue of whether robbery may be employed as an aggravating circumstance when the conviction of first degree murder was predicated on the felony-murder rule, we express no opinion regarding that issue herein and decline to adopt the reasoning of the North Carolina Court in Cherry v. State, 257 S.E.2d 551 (N.C. 1979).

v. Pritchett, 621 S.W.2d 127 (Tenn. 1981) (underlying felony can be used as an aggravating circumstance under any set of circumstances). In *Cherry,* the court specifically noted that the defendant was convicted under the felony-murder rule and the judge never mentioned premeditation and deliberation. The court continued by stating:

> Nothing we have said herein should be construed to foreclose consideration of the aggravating circumstances . . . when a murder occurred during the commission of one of the enumerated felonies but where the defendant was convicted of first degree murder on the basis of his premeditation and deliberation. In such case, the jury should properly consider the aggravating circumstances in determining sentence.

*Cherry,* 257 S.E.2d at 568. In *Goodman, supra,* the North Carolina Court once again explained the limitation created in the *Cherry* decision. The court reiterated that under the rule set forth in *Cherry* the underlying felony can be presented as an aggravating circumstance only when the defendant is convicted of first degree murder upon the theory of premeditation and deliberation. The *Goodman* court went on to hold that the defendant was found guilty upon the theory of premeditation and deliberation as well as by virtue of the felony-murder rule; therefore, the lower court did not err in submitting to the jury the aggravating circumstances of burglary and robbery. Accordingly, we conclude that the three judge panel properly found the robbery as an aggravating circumstance because appellants were convicted of first degree murder based upon the theories of premeditation and deliberation as well as the felony-murder rule.

 6. *Kidnapping as an Aggravating Circumstance.*

Appellants entered into plea negotiations whereby they agreed to plead guilty to first degree kidnapping in return for the District Attorney's promise that the plea would not be used as a judicial admission, but would be proven through independent evidence. Appellants claim that the stabbing immediately caused Hoff's death and that, consequently, there was insufficient evidence to establish the aggravating circumstance of kidnapping. We disagree.

The standard for determining the sufficiency of the evidence in a criminal case is set forth in Jackson v. Virginia, 443 U.S.

307 (1979). In *Jackson,* the United States Supreme Court stated:

> After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." (Citation omitted.) Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-319 (emphasis in original).

In the instant case, there was testimony by two different witnesses that appellants' co-defendants had stated that Hoff was still "moaning" or "groaning" when he was placed in the car and that he died in the car as they were being chased through town. There was also testimony from several witnesses that Hoff's body was wrapped in a sheet before being placed in the car. This sheet was still wrapped around the body when it was found buried in Verdi. The sheet contained several knife slits suggesting that Hoff had been stabbed in the car while he was still alive. Finally, the doctor who performed an autopsy on Hoff testified that Hoff did not die instantly; he stated he could have lived as long as twenty minutes. Under these circumstances, a reasonable trier of fact could have concluded beyond a reasonable doubt that the movement and· confinement of Hoff increased the risk of harm to Hoff. If Hoff had been left at the location where he was stabbed, the surveillance teams in the area may have been able to reach him in time to provide some form of assistance. *See* Langford v. State, 95 Nev. 631, 600 P.2d 231 (1979); Wright v. State, 94 Nev. 415, 581 P.2d 442 (1978). Therefore, a review of the record in the light most favorable to the prosecution indicates that a rational factfinder could have found the appellants perpetrated a kidnapping with the use of deadly weapons.

Appellants also claim that the three judge panel erred by finding robbery and kidnapping as two separate aggravating factors because only one aggravating circumstance can be

found for the felonies listed in NRS 200.033(4).[8] Without citing any relevant authority, appellants contend that statutory construction mandates that only one aggravating circumstance can be found under this section regardless of the number of felonies actually committed. We cannot agree.

A logical reading of the statute requires that each felony be used as an aggravating circumstance. First degree murder is aggravated when it is committed during the course of one of the enumerated felonies contained in NRS 200.033(4). Therefore, when the murder is committed during the course of more than one of the felonies listed, the murder is more aggravated and heinous than it would have been if only one of the felonies were present. Moreover, other jurisdictions confronted with this issue have held that any of the enumerated felonies that have been committed during a murder can properly be used as aggravating circumstances even though they are found in the same subdivision of the statute. *See, e.g.,* Washington v. State, 362 So.2d 658 (Fla. 1978), *cert. denied,* 441 U.S. 937 (1979) (robbery and burglary found as separate aggravating circumstances); Legare v. State, 257 S.E.2d 247 (Ga. 1979), *cert. denied,* 444 U.S. 984 (1979) (armed robbery and burglary found as separate aggravating circumstances); State v. Shaw, 255 S.E.2d 799 (S.C. 1979), *cert. denied,* 444 U.S. 957 (1979) (rape, kidnapping and armed robbery found as separate aggravating circumstances).

7. *Murder for Pecuniary Gain as an Aggravating Circumstance.*

The third and final aggravating circumstance found by the three judge panel was that the appellants committed the murder for the purpose of receiving money. Appellants claim that the panel erred by finding that robbery and murder for pecuniary gain are two separate aggravating circumstances because murder for pecuniary gain as found in NRS 200.033(6) is limited to the "hired gun" situation.[9]

---

[8]NRS 200.033(4) provides:

The murder was committed while the person was engaged, or was an accomplice, in the commission of or an attempt to commit flight after committing or attempting to commit, any robbery, sexual assault, arson in the first degree, burglary or kidnapping in the first degree.

[9]NRS 200.033 provides in pertinent part:

The only circumstances by which murder of the first degree may be aggravated are:

. . .

6. The murder was committed by a person, for himself or another, for the purpose of receiving money or any other thing of monetary value.

According to the testimony of Lani, appellants came to the motel room he shared with Stites to discuss the killing of a drug dealer. Wilson told Lani and Stites that they needed some help to kill Hoff and offered to pay them $3,500 for their participation. Pursuant to the agreement, they were given $3,500 for stabbing Hoff. Under these circumstances, we find that the killing of Hoff was in the nature of a "hired gun" situation; therefore, we decline to consider the issue of whether the statute is limited solely to contract-type killings.

The other issues raised by appellants have been considered and we find them to be without merit. Accordingly, we affirm the judgments of conviction, together with the sentences of death.

MOWBRAY and STEFFEN, JJ., concur.

GUNDERSON, J., with whom SPRINGER, J., agrees, concurring:

These appeals relate principally to determinations of a three-judge panel, which sentenced appellants following the entry of guilty pleas. In this procedural context, it does not appear to us that any of the rulings in question constituted prejudicial error.