## FREDERICK JEROME WOODS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 29856

May 19, 1998                    958 P.2d 91

*William G. Rogers,* Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Noel S. Waters,* District Attorney, *Anne M. Langer,* Chief Deputy District Attorney, Carson City, for Respondent.

## OPINION

*Per Curiam:*

Appellant Frederick Jerome Woods pleaded guilty to one count of felony driving under the influence of intoxicating liquor (DUI) causing death, and one count of felony DUI causing substantial bodily harm, pursuant to NRS 484.3795. The district court accepted the plea agreement, but prior to sentencing, Woods moved to withdraw his plea. The district court denied Woods' motion and sentenced him to consecutive fifteen-year terms of imprisonment on each count.

Woods appeals arguing that the district court erred in denying his motion to withdraw the plea because Woods did not voluntarily, knowingly, and intelligently enter the plea agreement. Woods also contends that, pursuant to NRS 484.3795(2), it was unlawful for the State to dismiss two of the four original charges in exchange for his guilty plea; therefore, it was error for the district court to accept the plea agreement. Woods further asserts that the district court erred by imposing consecutive sentences for the same act.

### FACTS

On August 19, 1993, around 6:30 p.m., Woods was driving his Dodge Shelby east on U.S. Highway 50 West, near Carson City. Alvin Costa sat in the passenger seat, Deborah Roberts sat in the center of the rear seat, and Woods' two minor nephews sat in the rear seat on either side of Roberts. Woods lost control of his car and crashed into another vehicle which was travelling west on Highway 50. The other vehicle was driven by Diane Richards, and Wilma Zamberlan was a passenger.

Costa and Roberts were killed in the accident; Roberts' body had remained in the rear center of the Dodge and Costa's body was found outside, lying on part of the detached passenger door in the westbound lane. Woods' nephews were unharmed. Richards and Zamberlan survived the accident, but sustained serious injuries. Woods was thrown from the Dodge and landed on the center line; he suffered head injuries and was "Care Flighted" to the hospital where his blood alcohol content was found to be greater than 0.10 percent.

On November 12, 1993, the State filed a criminal con.plaint against Woods alleging four counts of felony DUI pursuant to

NRS 484.3795 alleging as follows: Count I—DUI causing the death of Costa; Count II—DUI causing the death of Roberts; Count III—DUI causing substantial bodily harm to Richards; and Count IV—DUI causing substantial bodily harm to Zamberlan. On May 17, 1994, due to the head injuries suffered by Woods in the accident, his public defender, Diane Crow, moved the district court for a competency examination. The court granted Crow's motion; Edward J. Lynn, M.D. (Dr. Lynn), a doctor of psychiatry and neurology, subsequently examined Woods and in a letter to Crow, dated July 6, 1994, concluded that Woods was "competent to stand trial. He understands the charges against him and is capable of assiting [sic] his attorney in the preparation and execution of his defense." Dr. Lynn also reported that during the interview Woods stated that Costa had been driving at the time of the accident.

At the August 25, 1995 preliminary hearing, Nevada Highway Patrol (NHP) Trooper Allen Stout testified that based upon the physical evidence at the scene of the accident and comparing the types of injuries sustained by Costa and Woods, Woods had been driving at the time of the accident. Woods' nephews gave conflicting reports on the issue of whether Woods had been driving at the time of the accident.

On January 18, 1996, the district court granted Crow funds to hire an expert accident reconstructionist to prepare for Woods' trial. According to Crow, she told Woods that she could not find any expert who was able to rebut Stout's conclusions. On August 13, 1996, following negotiations, Woods entered into a written plea bargain with the State wherein he agreed to plead guilty to two counts of felony DUI: Count I—DUI causing the death of Costa and Roberts; and Count II—DUI causing substantial bodily harm to Richards and Zamberlan.

On August 14, 1996, the district court accepted Woods' change of plea. Prior to canvassing Woods, the district court noted that the defense had employed an accident reconstructionist, a biodynamics engineer to assist in placing people in the Dodge, and a third expert, referred to by Crow, who had taken samples from the Dodge and who had "check[ed] the seat belts." In the presence of Woods and his family, the district court inquired as to whether Crow had been given adequate resources to fully investigate Woods' case. Crow responded in the affirmative, stating that she had conferred with several experts and Woods' family, and indicated that Woods and his family were fully aware of the extent of her investigative efforts.

The court then reviewed the two counts of the third amended complaint with Woods and asked him various questions. The court went through various provisions of the plea memorandum, explained the elements of each crime, and advised Woods that the

State would have to prove each element beyond a reasonable doubt before Woods could be convicted at trial. The court also inquired as to whether Woods had been satisfied with his representation by Crow, to which Woods responded affirmatively. The dialogue with Woods continued:

> COURT: Now, have you had an opportunity to your satisfaction to discuss with your attorneys the possible defenses that may be imposed on these charges if you were to go to trial?
>
> WOODS: Yes, sir.
>
> COURT: In light of that discussion and information which has been provided to you, do you feel this negotiated plea is the best thing for you to do, all things considered?
>
> WOODS: Yes, sir.

Continuing the canvass, the court reviewed the ranges of punishment and fines, and told Woods that probation would not be available. Woods indicated that he understood that the four counts had been combined into two and that the State could ask for up to fifteen years' imprisonment on each count to run consecutively or concurrently. The court asked Woods if he understood that he waived specific constitutional rights by pleading guilty and reviewed those rights. Woods indicated that he understood each of the rights discussed by the court:

> COURT: Mr. Woods, is there anything about any of these rights you do not understand that you would like to question me further about?
>
> WOODS: No, sir.
>
> COURT: Knowing you have those rights, do you still wish to voluntarily waive them and ask me to accept your plea of guilty to th[ese] charge[s]?
>
> WOODS: Yes, sir.
>
> . . . .
>
> COURT: Before you signed [the plea memorandum], did you have an opportunity to read it thoroughly and discuss its entire contents with your attorney?
>
> WOODS: Yes, sir.
>
> . . . .
>
> COURT: Mr. Woods, do you have any other questions about this process that has taken place to date that you would like to ask me about?
>
> WOODS: No, sir.
>
> COURT: Do you still request then that I accept your guilty pleas to those two charges and vacate the trial scheduled for next Monday?
>
> WOODS: Yes, sir.
>
> COURT: I'll accept the plea.

On September 27, 1996, prior to sentencing, Woods filed a motion asking that Crow be allowed to withdraw as his counsel. Crow's attached affidavit stated that Woods had recently told her he was not happy with her representation, and he thought Crow had lied to and withheld information from him. Woods told Crow that he intended to withdraw his guilty plea and obtain new counsel. On October 18, 1996, Woods filed a motion to change his plea to not guilty. He argued that his counsel had been deficient and that his plea had not been voluntarily, knowingly, and intelligently entered.

In conjunction with his motion to withdraw his guilty plea, Woods attached a letter to the district court in which he asserted that the State had lost audio tapes of his young nephews' statements and, therefore, Crow should have moved for a dismissal of charges against him. Woods also claimed that Crow had failed to pursue an NHP videotape of the accident scene, and a videotape depicting his treatment at the hospital following his accident. Woods stated that Crow had "badgered" him into saying only "yes sir, no sir" during his plea canvass, and that Crow had threatened him with 140 years in prison if he did not plead guilty. Woods contended that Crow had told him to lie to the probation officer during the pre-sentence investigation and state that he had no memory of the accident. Woods also asserted that Crow was aware of a phlebotomist who had seen seat belt marks on Woods' body; however, Crow did not have this person testify. In conclusion, Woods stated that he had been coerced during plea negotiations, and that he had a mentality of a sixteen-year-old at the time. Woods stated that if he had received a copy of the preliminary hearing transcript he would not have entered a guilty plea.

On October 28, 1996, the district court allowed Crow to withdraw as Woods' counsel and appointed William Rogers as new defense counsel. At the December 3, 1996 hearing on Woods' motion to withdraw his guilty plea, Woods, his mother—Mrs. Woods—and Crow testified. Mrs. Woods testified that her son was like an eight-year-old since the accident and had been rated at one hundred percent disability by Social Security. She asserted that Crow had told Woods' family to lie and say that Woods had no recollection of the accident; Crow had refused their request for a transcript of the preliminary hearing until after Woods had signed the plea memorandum, and would not allow them to be present when Woods had signed the agreement. According to Mrs. Woods, after signing the plea agreement, Woods came out of Crow's office crying.

Woods then testified that he had lied, at Crow's behest, to parole and probation about having no memory of the accident. He reiterated all of his complaints set forth in the letter accompany-

ing his motion to withdraw his plea. Additionally, he stated that because Crow's experts had said that seat belts had not been used by the adult occupants of the Dodge, Crow had simply ignored the statement by the phlebotomist who had seen seat belt marks on Woods shortly after the accident. Finally, Woods testified that Crow had "let all of the witnesses get away" who had seen the accident.[1] Woods contradicted his mother's testimony and stated that his family had been present and had reviewed the plea agreement when he signed it.

Crow testified that she had explained to Woods that the most he could get if he went to trial was 104 years, but that he would probably get a forty-year sentence. Crow told Woods, while discussing the option of a plea bargain, that none of her experts had been able to rebut NHP Trooper Stout's contention that Woods had been the driver. She stated that on the day Woods signed the plea agreement, he was calm and that his family had been present; Woods' wife apologized to Crow for previously being angry with Crow and gave Crow a hug. Crow denied ever telling Woods to simply say "yes sir" or "no sir" during the district court canvassing. Crow explained: "My typical conversation with a client coming into Judge Fondi's courtroom is Judge Fondi will ask yes or no type questions, but if they have questions they should direct those to the Judge himself."

With regard to whether Crow told Woods to lie about his recollection of the accident for the pre-sentence report, Crow testified: "I advised Mr. Woods specifically not to lie, but if he had no memory, he had no memory, and that is what he should tell them if that was the truth." As to the videotapes, Crow asked NHP for a copy but was informed that a trooper had made the video on his home video camera, and that the video was not available because the trooper had either left the NHP or relocated. Crow asserted that she did not file a motion based upon the lost NHP tape because Woods had accepted the plea and she did not believe that the videotape had been intentionally destroyed or that its absence was prejudicial to Woods.

According to Crow, the trauma room tape had been routinely taped over, and she had followed up on the phlebotomist's contention regarding seat belt marks; defense experts had concluded

---

[1] We note that this testimony seems to hurt, rather than help Woods as witnesses apparently told Woods' family that he had been the one driving. Specifically, Woods testified:

> [Crow] let all of my, the witnesses that drove my family through the accident scene and were present when a trooper said to my mother, "That is not your son on the pavement. He has been Care Flighted." but yet they told her that I had been pulled from behind the wheel and that was me laying on the ground.

that a seat belt had not been used by Woods. At the end of direct examination, Crow maintained that Woods had understood the plea bargaining process and had voluntarily entered a plea. She also asserted that she had never denied Woods' family a copy of the preliminary transcript and had provided a copy at their first request, which was after Woods had signed the plea agreement.

On cross-examination, Woods' new counsel (Rogers) asked Crow about Woods' explanation of events given to Dr. Lynn during his 1994 competency examination wherein Woods stated that he was a passenger at the time of the accident. Rogers asked: "When in this particular case did you realize that the Defendant had a memory of what had in fact occurred in this case?" Crow responded, "I don't know if I ever gained that knowledge from Mr. Woods." Following Crow's testimony, Rogers conceded that there had been no deficiency in the judge's canvassing of Woods; Rogers had not been present during the canvassing but nonetheless argued to the judge that Woods' answers had been "extremely stilted . . . . While they may be the right answers, they are almost robot in nature."

At the conclusion of the hearing, the district court judge denied Woods' motion to withdraw his plea and stated: "First of all, this Court, myself, the Judge of this Court, was present throughout the process. I did not observe the Defendant to be robot like in his responses [to the canvassing questions]." The judge noted that Woods' family had been present during the August 1994 hearing in which Woods' plea was accepted: "No objections were made to the process. They seemed to be participating in it." The district court concluded that the canvass had been proper and that Woods' plea had been knowingly, intelligently, and voluntarily made.

Prior to sentencing, on December 6, 1996, Woods moved the court to set aside his plea bargain as being unlawful pursuant to NRS 484.3795(2). Woods argued that in consolidating the original four counts of the criminal complaint into the two- count plea agreement, the State had violated NRS 484.3795(2), which limits the State's ability to dismiss a felony DUI charge in exchange for a guilty plea. At the December 17, 1996 sentencing hearing, the court denied Woods' motion to set aside the plea based upon NRS 484.3795(2). The district court adopted the presentence report and the State's sentencing recommendation of two fifteen-year consecutive sentences; the district court also assessed a fine of $2,000 on each of the two counts.

Woods now appeals from his judgment of conviction arguing that the district court erred in denying his motions to withdraw and set aside the plea agreement. He argues that his plea was not voluntarily, knowingly, and intelligently entered, and that the

plea agreement was unlawful pursuant to NRS 484.3795(2). He further asserts that the district court erred by imposing consecutive sentences based upon a single act.

## DISCUSSION

*The district court did not err in denying Woods' motion to withdraw his plea*

NRS 176.165 provides:

> Except as otherwise provided in this section, a motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of sentence is suspended. To correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

A district court may, in its discretion, grant a defendant's motion to withdraw a guilty plea for any "substantial reason" if it is "fair and just." State v. District Court, 85 Nev. 381, 385, 455 P.2d 923, 926 (1969). Woods concedes that the canvass was "textbook" perfect, and we defer to the district court judge who concluded that Woods' reactions were not "robot-like"; however, this court has held that the district court must also look to the totality of the circumstances and the entire record. Mitchell v. State, 109 Nev. 137, 140-41, 848 P.2d 1060, 1061-62 (1993).

In *Mitchell,* we concluded that, "viewing the record as a whole. especially in light of appellant's credible claim of factual innocence and the lack of prejudice to the state," the district court abused its discretion in denying the motion to withdraw appellant's guilty plea. 109 Nev. at 141, 848 P.2d at 1062. In the instant case, Woods did not assert a "credible claim of factual innocence" and, as evidenced by the transcript of the December 3, 1996 hearing on Woods' motion, the district court properly considered the totality of the circumstances and the entire record. Viewing the record as a whole, we conclude that Woods voluntarily, knowingly, and intelligently entered the plea agreement.

Woods' reliance on Hanley v. State, 97 Nev. 130, 624 P.2d 1387 (1981), and Smith v. State, 110 Nev. 1009, 1014, 879 P.2d 60, 63 (1994), is misplaced. Woods cites *Hanley* for the proposition that a defendant must be personally addressed regarding his knowledge of the elements of the crime and defense counsel's " 'word' that the elements of the criminal offense had been dutifully explained" will not suffice. *Id.* at 135 n.3, 624 P.2d 1390 n.3. This court has replaced *Hanley's* formally structured

analysis of the plea canvass with a review of the record as a whole to ensure, *inter alia,* that a defendant understood the true nature of the charge against him. Dressler v. State, 107 Nev. 686, 696 n.6, 819 P.2d 1288, 1294-95 n.6; Bryant v. State, 102 Nev. 268, 273, 721 P.2d 364, 367 (1986). Having reviewed the canvass and the plea memorandum, it is clear that the district court personally engaged Woods regarding the elements of the offenses with which he was charged.

In *Smith,* we addressed a situation where the plea memorandum was "completely inconsistent with the court's canvass." *Smith,* 110 Nev. at 1014, 879 P.2d at 63. Here the parties have admitted that the canvass was not deficient and there was no discrepancy between the canvass and the written plea memorandum. Therefore, the district court did not abuse its discretion in denying Woods' motion to withdraw his guilty plea.

*The district court did not err in denying Woods' motion to set aside the plea pursuant to NRS 484.3795(2)*

At the time of the accident, NRS 484.3795(2) provided:

> No prosecuting attorney may dismiss a charge of violating the provisions of subsection 1 in exchange for a plea of guilty or nolo contendere to a lesser charge or for any other reason unless he knows or it is obvious that the charge is not supported by probable cause or cannot be proved at the time of trial. . . .

Woods contends that the State's decision to combine the four original counts into two counts in the plea agreement rendered the plea bargain unlawful pursuant to NRS 484.3795(2). Thus, Woods contends that the district court erred in accepting an unlawful plea agreement.

In Jenkins v. District Court, 109 Nev. 337, 849 P.2d 1055 (1993), the defendant was charged with three alternate offenses in a single count: DUI causing death, reckless driving causing death, and involuntary manslaughter. *Id.* at 338, 849 P.2d at 1056. The defendant asked the district court for leave to plead no contest to the involuntary manslaughter charge and asked it to dismiss the DUI and reckless driving charges. *Id.* The district court made the State set forth all of the alternate offenses in separate counts and agreed to accept the defendant's no contest plea to manslaughter, but refused to dismiss the remaining counts. *Id.* at 339, 849 P.2d at 1056. The defendant filed a petition for a writ of prohibition arguing that the district court erred in refusing to dismiss the remaining charges after accepting his no contest plea. *Id.*

We denied the petition and stated, in relevant part:

. . . [D]ismissing the felony DUI charge and accepting petitioner's plea of no contest would destroy the intent of NRS 484.3795(2). The statutory language reflects a clear *legislative intent to prevent defendants from escaping a conviction for felony DUI by pleading to a "lesser charge."* If the district court had agreed to accept petitioner's no contest plea to involuntary manslaughter and dismiss the felony DUI charge, the intent behind NRS 484.3795(2) would have been unlawfully circumvented.

*Jenkins,* 109 Nev. at 340, 849 P.2d at 1057 (footnote omitted) (emphasis added).

*Jenkins* is distinguishable from the instant case. Woods is not escaping a felony DUI conviction for a lesser charge. More importantly, Woods voluntarily entered into the plea agreement and accepted its attendant benefits. In People v. Webb, 230 Cal. Rptr. 755 (Ct. App. 1986), the defendant argued that the trial court lacked jurisdiction to accept his plea bargain because it violated a California statute that limits plea bargaining in cases of driving under the influence. *Id.* at 761. The California appellate court concluded that the defendant lacked standing to challenge the validity of the plea bargain, reasoning that "[s]ince [the statute] was not intended for the defendant's benefit, no public policy precludes estopping the defendant from using that section as a shield after consenting to the acceptance of a plea bargain." *Id.* at 763. On these facts, we conclude that Woods is now estopped from challenging the lawfulness of the plea agreement under NRS 484.3795(2).

*The district court did not err by imposing consecutive sentences*

In Galvan v. State, 98 Nev. 550, 555, 655 P.2d 155, 157-58 (1982), we held that when applying drunk driving statutes, multiple victims give rise to multiple offenses. In *Galvan,* a case remarkably similar to the one at bar, the defendant was convicted of two counts of felony DUI causing death, pursuant to NRS 484.3795. *Id.* at 551-52, 655 P.2d at 155. The defendant received consecutive six-year sentences on the two counts. *Id.*

On appeal, the defendant urged this court to follow California case law holding that violation of the drunk driving law constituted only one offense; therefore, only one sentence could be imposed regardless of the number of victims. *Id.* at 554-55, 655 P.2d at 157. The California case of People v. Lobaugh, 95 Cal. Rptr. 547 (Ct. App. 1971) reasoned:

. . . the fundamental concern of the state is not the outrage done the victims, but rather the prevention of "drunken driving" and the punishment of those who so conduct themselves. . . . "[I]t is not the receiving of the injury that

concerns the state, but the *causing* of such injuries which the state seeks to minimize."

*Id*. at 549-50 (quoting People v. Chatham, 110 P.2d 704, 706 (Cal. Ct. App. 1941)).

In affirming the defendant's conviction and sentence, this court opined:

> The California cases depart from the usual rule, long established in Nevada, that a course of conduct resulting in harm to multiple victims gives rise to multiple charges of the offense. *See* State v. Lambert, 9 Nev. 321 (1874).
>
> Appellant urges us to apply the *Lobaugh* court's reasoning to NRS 484.3795 because Nevada's statute is similar to California's. We fail to perceive that this is a compelling reason to adopt the *Lobaugh* court's rationale. We believe that the *Lobaugh* court too narrowly defines the public policy concerns underlying drunken driving statutes. We are convinced that the state is concerned with both the "causing" *and* "receiving" of the injuries which the legislature has sought to minimize. We therefore uphold the conviction of the two felony counts.

*Galvan*, 98 Nev. at 555, 655 P.2d at 157-58.

It is true that "[a] court should normally presume that a legislature did not intend multiple punishments for the same offense absent a clear expression of legislative intent to the contrary." Talancon v. State, 102 Nev. 294, 300, 721 P.2d 764, 768 (1986). However, the instant case does not involve a single offense; in *Galvan* we expressly held that multiple victims give rise to multiple offenses under NRS 484.3795, and we have no desire to revisit this holding. Accordingly, Woods' reliance on *Talancon* is misplaced. We conclude that, pursuant to *Galvan*, the district court did not err by imposing consecutive sentences on Woods for each count of felony DUI.

## CONCLUSION

We conclude that Woods was estopped from challenging the lawfulness of the plea agreement pursuant to NRS 484.3795(2), and that the district court did not err in denying Woods' motion to withdraw his plea. We further conclude that there was no error in imposing consecutive sentences for each of the two counts of felony DUI. Woods' conviction and sentences are affirmed.