DAVID CRAWFORD, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 35810

September 17, 2001 30 P.3d 1123

*Scott L. Bindrup,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

By the Court, AGOSTI, J.:

The body of Gloria Joann Dugan, a woman with whom David Crawford was personally involved in a relationship, was discovered on March 25, 1997. She had been shot multiple times. After the police investigated her homicide, the district attorney charged David Crawford, on March 28, 1997, with murder with the use of a deadly weapon and burglary.

At a hearing on April 10, 1997, the justice of the peace lowered Crawford's bail to $360,000.00. Crawford's parents posted the bail and he was released that day. Crawford waived his right to have the preliminary hearing which was scheduled for August 6, 1997, based upon a plea bargain he had made with the State. Crawford had agreed to enter a plea of guilty to first-degree murder with the use of a deadly weapon. He also agreed to accept a sentence of two terms of life imprisonment without the possibil-

ity of parole. Crawford and the State also agreed that sentencing would take place after Christmas 1997.

Crawford was expected to plead guilty according to the terms of the plea bargain on August 21, 1997. However, that hearing was continued after the court granted Crawford's request that he be allowed to enter his plea after his September birthday had passed.

At a hearing on November 17, 1997, Crawford, instead of pleading guilty according to the plea bargain, pleaded not guilty. The court set the matter for trial, but that trial date was continued. Crawford remained on bail and in the community for more than two years with the first-degree murder charge pending. He married and fathered a child during his time at liberty in the community.

On August 26, 1999, four days prior to his scheduled trial date, Crawford withdrew his plea of not guilty and thereafter entered a plea of guilty to first-degree murder with the use of a deadly weapon. He had executed a written plea agreement that morning, prior to the hearing on his change of plea. Crawford wanted to remain on bail until he was sentenced, and he wanted to be sentenced after Christmas 1999. After accepting Crawford's guilty plea, the court set his sentencing date for January 6, 2000. Crawford was permitted to remain at liberty on his previously posted bail. However, the court, acting on its own initiative, held a hearing one week after Crawford had pleaded guilty. The hearing concerned Crawford's bail status. Ultimately, on September 9, 1999, the court revoked Crawford's bail, and Crawford was jailed.

Crawford objected, claiming that a condition for his guilty plea was that he be allowed to remain at liberty until after Christmas. His motions for reconsideration, for a remand to justice court or, in the alternative, to withdraw his guilty plea were denied by the court. Crawford was sentenced in February 2000 to two consecutive terms of life imprisonment without the possibility of parole for Dugan's murder and for the use of a deadly weapon.

Crawford raises several issues on appeal including allegations that his due process rights under the Fourteenth Amendment were violated by the court when it displayed personal bias against Crawford by revoking his bail. We determine that this assignment of error is without merit. In our review of the record we detect no evidence of bias.

Crawford next claims that the judge engaged in an ex parte communication with Crawford's attorney. The day before Crawford pleaded guilty, a member of the judge's staff contacted Crawford's counsel and directed him to phone the judge at his home. Counsel called the deputy district attorney assigned to prosecute Crawford and told him he would be calling the court as

directed. Counsel then phoned the judge, and an ex parte conversation took place.

Whenever a judge communicates with a party concerning a pending proceeding without notice to the adverse party, an ex parte communication has occurred.[1] Canon 3(B)(7)(a) of the Nevada Code of Judicial Conduct prohibits a judge from engaging in ex parte communications except where circumstances require such contact for scheduling and no substantive matters or issues on the merits are discussed. The record reveals that the judge acknowledged that he engaged in ex parte communications with Crawford's attorney and claimed that these communications were restricted to scheduling matters. However, according to Crawford's counsel, the judge asked if Crawford would be pleading guilty. Counsel related Crawford's concern that if he pleaded guilty he would be jailed pending his sentencing hearing. Counsel informed the judge of his client's desire to remain on bail until he was sentenced and to be sentenced after Christmas 1999. The judge told counsel he would agree to those conditions.

It is not possible for this court to resolve this factual conflict in the context of this appeal. As a result, it is difficult to know whether this communication between the court and Crawford's counsel violated Canon 3(B)(7). Fortunately, we need not resolve this issue to decide Crawford's appeal because other error exists which requires reversal of the district court's denial of Crawford's motion to withdraw his plea of guilty. Nevertheless, we take this opportunity to indicate our disapproval of the judge's decision to communicate ex parte with counsel. Current technology, including conference calling and three-way calling, makes the dangerous practice engaged in by this judge unnecessary. By including a representative of the State in a conversation limited to questions of scheduling, the court might have avoided this embarrassing accusation of conduct which, if true, is at best unethical and at worst possible reversible error.

Error exists in this case which requires this court to reverse the judgment of conviction and remand the matter to the district court with instructions to the district court to allow Crawford to withdraw his guilty plea. When reviewing a district court's denial of a motion to withdraw a guilty plea, this court presumes that the district court properly assessed the plea's validity, and we will not reverse the lower court's determination absent abuse of discretion.[2] District courts may grant a motion to withdraw a guilty plea prior to sentencing for any substantial, fair, and just reason.[3] To

---

[1]*See* Nevada Code of Judicial Conduct Canon 3(B)(7).

[2]*Riker v. State,* 111 Nev. 1316, 1322, 905 P.2d 706, 710 (1995).

[3]*Woods v. State,* 114 Nev. 468, 475, 958 P.2d 91, 95 (1998).

determine whether the defendant advanced a substantial, fair, and just reason to withdraw a plea, the district court must consider the totality of the circumstances to determine whether the defendant entered the plea voluntarily, knowingly, and intelligently.[4] A thorough plea canvass coupled with a detailed, consistent, written plea agreement supports a finding that the defendant entered the plea voluntarily, knowingly, and intelligently.[5] Moreover, a guilty plea is presumptively valid, especially when it is entered into on the advice of counsel.[6] The guidelines for voluntariness of guilty pleas require only that the record affirmatively show that the defendant entered his plea understandingly and voluntarily.[7]

The record lends compelling credence to Crawford's assertion that his plea of guilty was conditioned upon the court's oral promise to allow him to remain out of custody until after Christmas. That condition is not reflected in and is inconsistent with the written plea agreement which Crawford signed before his hearing and before his oral guilty plea canvass. The signed, written plea agreement contains the following language: ''I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.'' The agreement is silent as to Crawford's custody status prior to sentencing. In contrast to the terms of the written agreement, Crawford, his counsel and the deputy district attorney engaged in a colloquy with the judge at the hearing on Crawford's change of plea but prior to entry of his guilty plea. The result of that conversation, parts of which were unreported, is that Crawford entered his guilty plea with the understanding that he would remain on bail pending a sentencing that would take place after Christmas 1999.

The hearing commenced with a bench conference initiated at the request of Crawford's attorney. The conference was not reported. At the conclusion of the conference, the judge directly addressed Crawford and acknowledged his understanding that Crawford wanted to remain on bail and to be sentenced after the Christmas holiday. The judge told Crawford that he would not decide whether to allow him to remain on bail or when to sentence him until after Crawford pleaded guilty. The judge empha-

---

[4]*Id.* at 475, 958 P.2d at 95-96; *see also State v. Freese,* 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000).

[5]*Woods,* 114 Nev. at 476, 958 P.2d at 96; *see also Freese,* 116 Nev. at 1105-06, 13 P.3d at 448.

[6]*Jezierski v. State,* 107 Nev. 395, 397, 812 P.2d 355, 356 (1991) (Young & Steffen, JJ., dissenting).

[7]*See Heffley v. Warden,* 89 Nev. 573, 574, 516 P.2d 1403, 1404 (1973).

sized to Crawford that his guilty plea would be unrelated to the judge's decision regarding bail. The judge, in effect, disavowed that Crawford would be allowed to remain on bail as an inducement for Crawford to plead guilty. However, that is not the circumstance under which Crawford ultimately pleaded guilty.

Immediately after the judge made his remarks, Crawford's attorney again stopped the proceedings and asked for another bench conference. Once again, the conference was unreported. After this second, off-the-record conversation, the judge deviated from his previously stated intention to take Crawford's plea before addressing his bail status and sentencing date. Instead, the judge agreed to determine Crawford's bail status and his sentencing date before asking for his plea and before canvassing him. The judge then explicitly agreed to allow Crawford to be sentenced after Christmas and strongly implied he would allow Crawford to remain on bail until he was sentenced. By making such a representation and such a calculated implication to Crawford, we conclude that the judge effectively promised to give to Crawford what Crawford wanted as an inducement to plead guilty.[8]

The judge did not elicit Crawford's plea to the murder charge until after the discussion regarding his bail and sentencing date was complete. Crawford then pleaded guilty. In response to the judge's canvass, Crawford told the judge his plea of guilty was made freely and voluntarily, and that he had read the plea agreement and signed it. The judge advised Crawford of the penalties that could be imposed. During the canvass the judge acknowledged that Crawford's desire to remain on bail was a component in his decision to plead guilty. He remarked to Crawford as follows: "Now, I know you want to stay out of custody and that is important to this plea, what you're going to do, but you're not pleading guilty just to get some more time, you're pleading guilty because you are guilty of First Degree Murder. Am I correct?" Crawford responded by saying, "Yes, sir."

Upon the court's acceptance of Crawford's guilty plea, a sentencing date of January 6, 2000, was set. The State did not move to revoke Crawford's bail in light of his guilty plea. The judge

---

[8]Prior to asking Crawford for his plea, the judge, during the course of discussion with both counsel, stated the following:

> All right. Let's argue it in reverse order then. . . . [W]hat we've discussed now twice at the bench is where Mr. Crawford would be after [pleading guilty]. Now, normally, if somebody pleads guilty I leave them out of custody—as I take it everyone does—until sentencing.
>
> . . . .
>
> [I]f he leaves, he bankrupts unless they're millionaires, he bankrupts his parents. . . .
>
> . . . .
>
> Yeah, I'll continue the sentencing until just after the first of the year.

clarified that Crawford was on bail, that his parents' house and property were pledged as collateral for the bond that had been posted and that Crawford was not on house arrest. No further mention of Crawford's bail status was made, and the hearing was adjourned, further confirming that the court had in actuality decided the matter of bail favorably to Crawford prior to taking Crawford's guilty plea.

Days later, when the court revoked Crawford's bail, it did so without the presentation of any additional evidence or argument by the State that bail had been improperly continued. The judge essentially expressed a change of heart, indicating that he, the judge, would sleep better at night if Crawford was behind bars. By revoking Crawford's bail, the judge either (1) violated the terms of the plea bargain that he had made himself a part of and bound himself to when he promised to allow Crawford to remain on bail for a lengthy time prior to sentencing as an inducement to get Crawford to plead guilty, or (2) whether he made such a promise or not, insufficiently canvassed Crawford so that his expectations regarding his bail and the conditions under which he was entering his plea would be clear and apparent from the record.

It is significant to our decision that the judge, during the oral plea canvass, failed to ask Crawford if he had been promised anything to induce him to plead guilty. The judge knew Crawford's liberty until his sentencing after Christmas 1999 was crucial to his willingness to plead guilty. The judge should have canvassed Crawford to clarify that he had not been promised or guaranteed continued bail and a delayed sentencing date as a condition to his plea of guilty, if in fact continued bail and a sentencing hearing delayed until after Christmas were not promised to him.

Our review of the record convinces us that under the totality of the circumstances, Crawford's plea was not knowing, voluntary and intelligent. The court's canvass of Crawford was insufficient, and the written plea agreement does not cure the insufficiency. Continued bail was a condition of his plea of guilty, yet the court failed to canvass him on that. The court failed to inquire of Crawford if any promises or guarantees were made to him upon which he relied as an inducement to plead guilty. Since the court's promise regarding bail and the sentencing date was articulated in court after Crawford signed the written plea agreement, the State may not rely upon that written agreement as evidence that Crawford's plea was knowing, voluntary and intelligent. The canvass conducted orally by the court was inadequate to demonstrate that Crawford's plea was voluntary and not the product of the

court's promise. Therefore, the district court abused its discretion when it denied Crawford's motion to withdraw his plea of guilty made after the district court revoked his bail.

Based upon the above, the decision of the district court is reversed, and the case is remanded to the district court with instructions to allow Crawford to withdraw his plea of guilty.

SHEARING and ROSE, JJ., concur.