EDWARD MOLINA, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 40598

April 14, 2004                                    87 P.3d 533

*Goodman & Chesnoff* and *Richard A. Schonfeld,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

---

Before SHEARING, C. J., ROSE and MAUPIN, JJ.

## OPINION

By the Court, MAUPIN, J.:

Edward Molina appeals from a judgment of conviction entered upon pleas of guilty to one count of sexual assault[1] and one count of lewdness with a child under the age of fourteen.[2] He claims on appeal that the district court erred in denying his presentence motion to withdraw the guilty pleas.

More particularly, Molina contends that his guilty pleas were the product of his lawyer's inadequate assistance and thus not the result of knowing, voluntary and intelligent waivers of his trial rights. He also contends that the district court improperly allowed his attorney to reveal the substance of privileged attorney-client communications at the hearing on his motion to withdraw the guilty pleas. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

On February 22, 2002, following proceedings in justice court, the State filed a criminal information charging Molina with three counts of sexual assault with a minor under fourteen years of age, two counts of lewdness with a child under fourteen years of age, and one count of annoying a minor. Molina, represented by a deputy public defender, pleaded not guilty at his arraignment in district court. Thereafter, the State presented a proposed plea bargain agreement, which required Molina to plead guilty to one count of sexual assault and one count of lewdness with a child under the age of fourteen.

At this point, Molina discharged his public defender and, through his spouse, secured the services of private counsel, Brent

---

[1] *See* NRS 200.366.

[2] *See* NRS 201.230.

Heggie, Esquire. Heggie was unable to negotiate a better arrangement. After two trial continuances, Molina entered pleas of guilty to an amended information drafted in conformity with the original plea proposal.[3]

The district court canvassed Molina before accepting his plea. Molina affirmed that he read and understood the plea agreement before signing it, that he freely and voluntarily signed the agreement, and that he believed the agreement was in his best interest. The district court explained to Molina the possible sentences, parole eligibility, fines, and lifetime supervision inherent in the plea arrangement, and further questioned Molina in graphic detail concerning the charges to which he was entering pleas of guilty. Molina unequivocally admitted to subjecting the minor victim to acts of anal intercourse and lewd misconduct. More particularly, the record reflects the following colloquy between the district court and Molina:

> Q: Sir, did you . . . willfully, unlawfully, feloniously subject the victim to sexual penetration, to wit, anal intercourse by placing your penis in her anal opening against her will? Yes or no?
>
> A: Yes.
>
> Q: As to Count Two, sir, did you commit a lewd or lascivious act with the body of the victim by licking her buttock?
>
> A: Yes.

The district court accepted Molina's plea after concluding that Molina freely and voluntarily entered the pleas.

Before sentencing, Molina moved the district court to withdraw his guilty pleas, asserting that he did not knowingly and intelligently waive his right to proceed to trial. The moving papers claimed that Heggie met with Molina on only one occasion, failed to discuss the State's evidence or the substance of the State's case until the evening before Molina was to appear for trial, failed to adequately discuss the options of proceeding to trial and failed to provide a defense. The motion also alleged that Heggie advised Molina that he "had" to plead guilty because Heggie would not take the case to trial. The district court conducted an evidentiary hearing on the motion before proceeding with formal sentencing.[4]

Heggie was the only witness at the hearing. He testified to the limitations placed upon his retention, *i.e.,* that Mrs. Molina hired him solely to negotiate a better plea agreement. Heggie initially believed that the case involved an "accidental touching" and that he

---

[3]The plea agreement provided that Molina would serve two sentences of ten years to life on the separate charges, and the State would not oppose concurrent imposition of the sentences by the district court.

[4]Molina was present at the hearing.

could improve upon the State's pending offer. However, after discussions with Molina's former public defender, Heggie learned that the case involved anal rape and that Molina had arguably admitted the allegations to Mrs. Molina.

Heggie also testified to conducting six telephonic interviews with Molina and twice visiting Molina in jail. According to Heggie, he reviewed the State's evidence with Molina,[5] informed Molina of the charges and elements of proof the State would have to satisfy at trial, discussed the apparent lack of a defense to the charges and advised Molina that the State's offer was likely the best he could obtain.

Over objection, Heggie testified that Molina admitted the sexual abuse allegations during one of the interviews in the presence of Mrs. Molina. According to Heggie, after a lengthy conversation with Mrs. Molina, Molina decided it was best to accept the plea agreement as then presented. Thereafter, Heggie reviewed the plea agreement with Molina, gave Molina an opportunity to ask questions, and discussed Molina's options if he wanted to go to trial without Heggie as trial counsel. Heggie believed they could still put on a defense at trial, but because of Molina's admissions of guilt, Heggie explained they could not present a defense of actual innocence, including testimony from Molina, without informing the district court that Molina or the trial witnesses might commit perjury. Heggie did not conduct an extensive pretrial investigation because the ultimate goal of his representation was to improve upon the then current negotiations rather than proceed to trial.

The district court denied the presentence motion to withdraw the pleas and imposed two concurrent sentences of life in prison, with the possibility of parole in 120 months, and lifetime supervision in the event of release on parole. The court gave Molina credit for 269 days served in local custody. Additionally, the court ordered Molina to submit to genetic marker testing, to pay a $25 administrative assessment fee, a $150 DNA testing fee, and $446 in restitution.

## DISCUSSION

### Ineffective assistance of counsel

Notwithstanding the limited nature of Heggie's retention, Molina argues that his counsel was deficient by not being ready for trial.[6] In this, Molina charges that Heggie failed to conduct a reasonable

---

[5]According to Heggie, the public defender told him that she also had reviewed the evidence with Molina.

[6]Molina argues that Heggie admitted at the hearing that he "signed on" for trial. Although Heggie agreed that he did not clearly restrict the scope of his representation upon substituting as Molina's counsel, he testified that he and Molina jointly understood that Molina never planned to go to trial and that his retention was limited accordingly.

pretrial investigation, citing failures to interview witnesses, develop alibis through the victim's brother, obtain a psychological examination of the child victim, and Heggie's refusal to take the case to trial. Molina also argues that he did not enter his guilty pleas voluntarily or intelligently because of Heggie's failure to visit and adequately discuss the State's evidence with him, provide Molina with copies of discovery obtained from the district attorney, and fully inform Molina regarding the pleas.

The question of whether a criminal defendant has received ineffective assistance of counsel presents mixed questions of law and fact, and is subject to independent review.[7] We review claims of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington.*[8] Under *Strickland,* the defendant must demonstrate that his counsel's performance was deficient, *i.e.,* it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defense.[9] However, "[i]n order to eliminate the distorting effects of hindsight, courts indulge in a strong presumption that counsel's representation falls within the broad range of reasonable assistance."[10] We need not consider both prongs of the test if the defendant makes an insufficient showing on either one.[11]

"A defendant who pleads guilty upon the advice of counsel may attack the validity of the guilty plea by showing that he received ineffective assistance of counsel under the Sixth Amendment to the United States Constitution."[12] However, guilty pleas are presumptively valid, especially when entered on advice of counsel, and a defendant has a heavy burden to show the district court that he did not enter his plea knowingly, intelligently, or voluntarily.[13] To establish prejudice in the context of a challenge to a guilty plea based upon an assertion of ineffective assistance of counsel, a defendant must " 'demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

---

[7]*Evans v. State,* 117 Nev. 609, 622, 28 P.3d 498, 508 (2001).

[8]466 U.S. 668 (1984).

[9]*Kirksey v. State,* 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996).

[10]*Dawson v. State,* 108 Nev. 112, 115, 825 P.2d 593, 595 (1992).

[11]*Kirksey,* 112 Nev. at 987, 923 P.2d at 1107 (citing *Strickland,* 466 U.S. at 697).

[12]*Nollette v. State,* 118 Nev. 341, 348-49, 46 P.3d 87, 92 (2002); *see also Hill v. Lockhart,* 474 U.S. 52, 58 (1985) (holding that *Strickland*'s two-part test applies to challenges of guilty pleas based on ineffective assistance of counsel).

[13]*Crawford v. State,* 117 Nev. 718, 722, 30 P.3d 1123, 1126 (2001); *Barajas v. State,* 115 Nev. 440, 442, 991 P.2d 474, 476 (1999).

would have insisted on going to trial.' ''[14] Because the district court ruled on Molina's motion before imposition of sentence, we may review its denial on direct appeal from the subsequent judgment of conviction.[15]

"A district court may, in its discretion, grant a defendant's [presentence] motion to withdraw a guilty plea for any 'substantial reason' if it is 'fair and just.' ''[16] Accordingly, Nevada trial and appellate courts must apply a more relaxed standard to presentence motions to withdraw guilty pleas than to post-sentencing motions.[17] A district court must examine the totality of the circumstances to determine whether a defendant entered his plea voluntarily, knowingly, and intelligently.[18] "A thorough plea canvass coupled with a detailed, consistent, written plea agreement supports a finding that the defendant entered the plea voluntarily, knowingly, and intelligently.''[19] "When reviewing a district court's denial of a motion to withdraw a guilty plea, this court presumes that the district court properly assessed the plea's validity, and we will not reverse the lower court's determination absent abuse of discretion.''[20]

We conclude that Molina has failed to substantiate his ineffective assistance claims. First, the district court carefully canvassed Molina on his understanding of the proceedings, the nature of the charges, and the possible penalties. Second, Molina signed a plea agreement memorializing the negotiations and manifested his understanding of its terms. Third, during the canvass, he affirmatively admitted his guilt in connection with the two charges. Fourth, Molina failed to demonstrate that Heggie's performance was deficient under *Strickland*.

Molina impliedly argues that, to satisfy *Strickland*, counsel must fully and completely prepare for trial, exhausting all avenues of de-

---

[14]*Kirksey*, 112 Nev. at 988, 923 P.2d at 1107 (quoting *Hill*, 474 U.S. at 59).

[15]NRS 177.045; *Lee v. State*, 115 Nev. 207, 210, 985 P.2d 164, 166 (1999) ("[A] district court's ruling on a pre-judgment motion to withdraw a guilty plea is reviewable on direct appeal from the judgment as an intermediate order in the proceeding.").

[16]*Woods v. State*, 114 Nev. 468, 475, 958 P.2d 91, 95 (1998) (quoting *State v. District Court*, 85 Nev. 381, 385, 455 P.2d 923, 926 (1969)).

[17]*See* NRS 176.165 (providing that a defendant may move to withdraw a guilty plea before or after imposition of sentence, but the district court may only grant a post-sentence motion in order to correct "manifest injustice").

[18]*Crawford*, 117 Nev. at 722, 30 P.3d at 1125-26.

[19]*Id.*

[20]*Id.* at 721, 30 P.3d at 1125.

fense, before rendering advice concerning a negotiated arrangement proposed by the State. We disagree.

Where counsel and the client in a criminal case clearly understand the evidence and the permutations of proof and outcome, counsel is not required to unnecessarily exhaust all available public or private resources. Here, Heggie testified that he reviewed the State's evidence with Molina, discussed the charges and elements the State would have to establish at trial, reviewed the plea agreement with Molina, discussed Molina's other options, and gave Molina an opportunity to ask questions. He also explained his belief that the victim's testimony was very strong, that Molina lacked a defense for trial, and that he did not investigate potential alibi witnesses because of the potential of perjury if these witnesses testified. Heggie's testimony establishes that he acted in an objectively reasonable manner given Molina's goals for securing private counsel in this instance. Also, evidence of Molina's admissions to Heggie in the presence of Mrs. Molina militates in favor of Heggie's view that Molina would have been convicted of a series of very serious felonies and would have been exposed to a sentencing structure with no reasonable chance of release during Molina's lifetime. Molina has not addressed the quality of evidence that Heggie would have developed with additional preparation, and we cannot discern from this record what it was about the defense case that a more adequate investigation would have uncovered. Accordingly, Molina has not demonstrated " 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "[21]

The district court was the sole judge of the credibility of the two opposing views aired at the hearing on Molina's motion, and the district court was entitled to accept Heggie's representations as true. Based upon the totality of the circumstances, we conclude that substantial evidence supports the district court's findings that Molina entered his plea knowingly, intelligently, and voluntarily. We therefore further conclude that Molina has failed to demonstrate the district court abused its discretion in denying the presentence motion to withdraw the guilty pleas.

*Waiver of the attorney-client privilege*

Molina argues that the district court erred by permitting Heggie to testify regarding privileged attorney-client communications, specifically Molina's admissions that he committed the charged offenses. Molina contends that only he could waive the privilege and

---

[21]*Kirksey,* 112 Nev. at 988, 923 P.2d at 1107 (quoting *Hill,* 474 U.S. at 59).

that he did not waive the privilege by filing his motion to withdraw his guilty pleas. He stresses that he did not testify at the hearing on his motion to withdraw his pleas, and that he limited the focus of the motion to Heggie's inactions and the virtual non-existence of their communications. From this he reasons that the minimal disclosures did not effect a waiver of the attorney-client privilege. This argument is meritless.

While NRS 49.055 defines attorney-client communications as confidential and NRS 49.095 provides that a client has a privilege of refusing to disclose such confidential communications, a client may waive the privilege.[22] Supreme Court Rule 156(3)(b) provides that a waiver of the privilege occurs when it becomes necessary for counsel "to respond to allegations in any proceeding concerning the lawyer's representation of the client." Additionally, the Legislature has instructed petitioners for writs of post-conviction habeas corpus[23] that, if a writ petition contains a claim of ineffective assistance of counsel, the claim acts as a waiver of the attorney-client privilege.[24] It follows by analogy and policy that a defendant requesting withdrawal of his guilty plea for the same reason, but using NRS 176.165 as the statutory basis for relief, also waives the privilege in such proceedings.[25]

___

Discussions between an attorney and a criminal client are always relevant to a judicial determination of voluntariness and knowingness of a plea when a defendant in a criminal case claims that his or her guilty plea was the product of ineffective representation. Such claims, of necessity, implicate a waiver of the privilege against disclosure of the communications between attorney and

---

[22]*See Lisle v. State,* 113 Nev. 679, 701, 941 P.2d 459, 473 (1997) (when client voluntarily reveals a significant portion of communication with attorney, " 'those revelations amount to a waiver of the attorney-client privilege as to the remainder of the conversation or communication about the same subject matter' " (quoting *In re Grand Jury Jan. 246,* 651 N.E.2d 696, 700 (Ill. App. Ct. 1995))); *cf. Manley v. State,* 115 Nev. 114, 979 P.2d 703 (1999) (defendant's statements at trial did not constitute a waiver of privilege because the statements did not disclose a significant portion of communications with attorney).

[23]NRS 34.724.

[24]NRS 34.735(6) states in relevant part:

> If your petition contains a claim of ineffective assistance of counsel, that claim will operate to waive the attorney-client privilege for the proceeding in which you claim your counsel was ineffective.

[25]We emphasize that the further use of any incriminating statements disclosed by a defendant's attorney after the waiver of the attorney-client privilege is left for another day. NRS 34.735(6) expressly limits the waiver of the attorney-client privilege to "the proceeding in which you claim your counsel was ineffective."

client.[26] Most significant for this controversy is Molina's claim on appeal that Heggie should have pursued an alibi defense. That Heggie could not ethically pursue such a defense could only be explained by Molina's admission to Heggie in the presence of Mrs. Molina.[27]

We will not permit a defendant to use insufficient communication with his attorney as a sword to assert a claim of ineffective assistance of counsel, but then use a claim of attorney-client privilege as a shield to protect the content of his conversations with his attorney.[28] We therefore hold that a motion to withdraw a guilty plea, based upon claims of ineffective assistance of counsel, directly places in issue the scope and content of communications between the attorney and the client.

## CONCLUSION

The district court properly denied Molina's presentence motion to withdraw his guilty plea. Accordingly, we affirm Molina's conviction.[29]

SHEARING, C. J., and ROSE, J., concur.

---

[26]*See, e.g., Cazanas v. State,* 508 S.E.2d 412, 413 (Ga. 1998) (trial court properly admitted defendant's attorney's testimony when defendant asserted he did not enter his plea with knowledge and understanding of the plea); *Com. v. Woodberry,* 530 N.E.2d 1260, 1261-62 (Mass. App. Ct. 1988) (trial court properly admitted the testimony of a defendant's ''plea attorney'' regarding communications between the defendant and the attorney relating to why the attorney advised the defendant that pleading guilty was in the best interests of the defendant); *see also Wardleigh v. District Court,* 111 Nev. 345, 891 P.2d 1180 (1995) (holding in civil cases, that implied waiver of privilege occurs when substance of communications is put at issue by a claim or defense and eventually claimant will be forced to draw upon the privileged communication at trial in order to prevail).

[27]We also note that Molina admitted during the plea canvass that he committed the offenses charged in the amended information. Thus, the substance of the communication he asserts the privilege covered was already a matter of public record.

[28]*See, e.g., Wardleigh,* 111 Nev. at 354, 891 P.2d at 1186.

[29]We note that this court, on October 7, 2003, entered an order temporarily suspending Heggie from the practice of law in the State of Nevada. We also note that the district court did not have the ability to review whether the events leading to the suspension had any bearing on Heggie's representation in this instance. Nevertheless, we cannot conclude whether the district court would have reached a different result given Heggie's testimony at the hearing. This issue must await a formal petition for post-conviction relief, which might require a further evidentiary hearing.