THE STATE OF NEVADA, Appellant, *v.*
SHANNON MICHELLE TRICAS, Respondent.

No. 59559

December 13, 2012                   290 P.3d 255

*Neil A. Rombardo*, District Attorney, *Gerald J. Gardner*, Assistant District Attorney, and *Daniel M. Adams*, Deputy District Attorney, Carson City, for Appellant.

*Diane R. Crow*, State Public Defender, and *James P. Logan*, Deputy Public Defender, Carson City, for Respondent.

## OPINION

By the Court, GIBBONS, J.:

In this appeal, we consider Nevada's prosecutorial immunity statutes, NRS 178.572 and NRS 178.574. NRS 178.572 provides that, on motion of the state, a court "may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence the witness may be required to produce." NRS 178.574 states that "[s]uch order of immunity shall forever be a bar to prosecution against the witness for any offense shown in whole or in part by such testimony or other evidence except for perjury committed in the giving of such testimony."

The question we must decide is whether a defendant who has been granted immunity under those statutes is protected from further prosecution where that defendant gives immunized testimony after pleading guilty, but before sentencing. Neither NRS 178.572 nor NRS 178.574 provides for use or derivative use immunity. Rather, they confer broad transactional immunity for compelled testimony. We therefore conclude that the statutes immunize defendants from further criminal action when compelled testimony is given pursuant to a grant of immunity under these statutes. We further hold that when this immunity is granted to a defendant who has already pleaded guilty to, but has not yet been sentenced for, offenses implicated by the compelled testimony, the immunity bars the defendant's punishment in the pending criminal prosecu-

tion. Accordingly, we affirm the district court's order granting the motion to withdraw the guilty plea and dismiss the criminal complaint.

## FACTS AND PROCEDURAL HISTORY

In July of 2011, a Nevada Highway Patrol officer pulled over an automobile driven by Gary Taylor. Respondent Shannon Tricas was a passenger in the car. Upon removing Tricas from the vehicle, the officer found various narcotics in Tricas's possession, including over 12 grams of methamphetamine concealed in the front of her pants. Tricas told the officer the narcotics belonged to Taylor.

The State filed a criminal complaint against Tricas alleging three felony and three misdemeanor counts. In August, Tricas entered into a plea bargain wherein she agreed to plead guilty to one count of conspiracy to commit a felony under the Uniform Controlled Substances Act, and the court scheduled sentencing for late September. Shortly thereafter, Tricas made a written statement concerning the circumstances of her arrest to the Department of Parole and Probation, for attachment as an addendum to her presentence investigation report. Her statement implicated Taylor as the owner of the drugs, and she described herself as merely holding the drugs for Taylor out of fear of Taylor's retribution. Based on her statement, the State decided to use Tricas as a witness against Taylor at his preliminary hearing. The State filed a motion in justice court requesting that the justice court grant Tricas immunity in exchange for her testimony against Taylor, which was granted.

Prior to sentencing in her own case, Tricas involuntarily testified at Taylor's preliminary hearing. After testifying, Tricas sought to reap the benefit of the immunity granted by the justice court and filed a motion to dismiss the criminal complaint filed against her, a motion to withdraw her guilty plea, and a request for hearing. In her motions, she argued that the justice court granted her transactional immunity, and therefore, the State could no longer prosecute her for any actions discussed in her testimony. The district court granted the motions to withdraw the guilty plea and to dismiss.

The State now appeals. For the reasons set forth below, we affirm and conclude that: (1) Nevada's immunity statutes do confer transactional immunity where a defendant is forced to testify; and (2) the grant of transactional immunity to a defendant in exchange for testimony, even after entering a guilty plea, immunizes a defendant from further prosecution, including sentencing.

## DISCUSSION

*Nevada's prosecutorial immunity statutes confer transactional immunity*

The State argues that the plain meanings of NRS 178.572 and 178.574 require immunity only from future prosecutions, regardless of the type of immunity the statutes might confer. Specifically, the State contends that since Tricas had already pleaded guilty, there could be no Fifth Amendment violation because it was too late for her statements to be used against her. Thus, the State claims that in this situation, the immunity granted only precludes the State from charging new crimes based on the compelled testimony. Tricas argues that the type of immunity intended to be conferred by NRS 178.572 and NRS 178.574 is dispositive, since transactional immunity would grant her full amnesty regardless of the stage of any pending criminal proceedings against her. We agree with Tricas.

The State moved for an order of immunity under NRS 178.572(1), which states, in pertinent part, that a court "on motion of the State may order . . . any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence the witness may be required to produce." NRS 178.574 provides that "[s]uch order of immunity shall forever be a bar to prosecution against the witness for any offense shown in whole or in part by such testimony or other evidence except for perjury committed in the giving of such testimony." These statutes allow the State to compel witness testimony while still affording the witness the protections underlying the Fifth Amendment right against self-incrimination. In choosing to seek immunity for the witness, the State is prioritizing; it is choosing to have answers from the witness instead of the witness's accountability. The justice court's order granting the State's motion incorporated the language from these statutes.

The initial question we must consider is the type of immunity contemplated by the statutes. "[W]e review questions of statutory interpretation de novo." *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). "Our objective in construing a statute is to give effect to the Legislature's intent." *Hobbs v. State*, 127 Nev. 234, 237, 251 P.3d 177, 179 (2011). Generally, this court will not look beyond a statute's plain meaning to determine legislative intent if the statute is clear on its face. *Lucero*, 127 Nev. at 95, 249 P.3d at 1228.

Courts generally recognize three types of immunity: (1) use, (2) use and derivative use, and (3) transactional. *Com. v. Swinehart*, 664 A.2d 957, 960 n.5 (Pa. 1995). "Use" immunity "provides immunity only for the testimony actually given pursuant to the order compelling said testimony." *Id.* "Use and derivative use" immunity prohibits both the use of compelled testimony and any information or leads that the State derives from the testimony. *Id.* "Transactional" immunity "in essence provides complete amnesty to the witness for any transactions which are revealed in the course of the compelled testimony." *Id.*

The United States Supreme Court first recognized the concept of immunity in 1892 in the case of *Counselman v. Hitchcock*, 142 U.S. 547, 585-86 (1892), when it ruled that immunity statutes must provide witnesses with transactional immunity in order to be coextensive with the Fifth Amendment. Specifically, the Court noted that a valid immunity statute "must afford absolute immunity against future prosecution for the offen[s]e to which the question relates." *Id.* at 586. In response to *Counselman*, the United States Congress enacted the Compulsory Testimony Act of 1893, codifying transactional immunity. *See State ex rel. Brown v. MacQueen*, 285 S.E.2d 486, 489 (W. Va. 1981). This federal statute became the model for many state immunity statutes, which ultimately includes our own. *See id.*

Almost a century later, the United States Supreme Court departed from the bright-line rule in *Counselman* that only transactional immunity could afford Fifth Amendment protections, and broadened the scope of immunity to include use and derivative use immunity. *Kastigar v. United States*, 406 U.S. 441, 453 (1972). However, *Kastigar* has not been adopted en massè, as several state courts have refused to recognize anything short of transactional immunity as providing adequate protections against self-incrimination. *See, e.g., State v. Gonzalez*, 825 P.2d 920, 933 (Alaska Ct. App. 1992); *State v. Miyasaki*, 614 P.2d 915, 922-23 (Haw. 1980); *Attorney General v. Colleton*, 444 N.E.2d 915, 918-19 (Mass. 1982); *State v. Soriano*, 684 P.2d 1220, 1232 (Or. Ct. App. 1983) (in banc), *aff'd*, 693 P.2d 26 (1984); *MacQueen*, 285 S.E.2d at 490.

In 1967, the Nevada Legislature enacted NRS 178.572(1) and NRS 178.574. *See* 1967 Nev. Stat., ch. 523, §§ 373.2 and 373.4, at 1457. At that time, the only form of immunity that the United States Supreme Court recognized as adequate to protect the privilege against self-incrimination was transactional immunity, since it was still five years before *Kastigar* deviated from the Compulsory Testimony Act of 1893. *See Kastigar*, 406 U.S. at 453.

Interestingly, the Senate Committee Hearing Minutes from 1967 discussing the immunity statutes reveal that the drafters adopted

Illinois' immunity law as a model for our legislation. *See* Hearing on A.B. 81 Before the Senate Judiciary Comm., 54th Leg. (Nev., April 3, 1967). In fact, the Nevada Legislature copied verbatim the language found in the Illinois immunity statutes, with the exception that Nevada added the preliminary hearing as a forum in which the State can seek immunity. *See* Ill. Rev. Stat. 1975, ch. 38, para. 106-1; Ill. Rev. Stat. 1989, ch. 38, para. 106-2; NRS 178.572(1); NRS 178.574.

In 1977, the Illinois Supreme Court interpreted the statutes from which NRS 178.572 and NRS 178.574 were drawn and determined that its statutes unambiguously afforded only broad transactional immunity, as opposed to narrower use immunity. *See People ex rel. Cruz v. Fitzgerald*, 363 N.E.2d 835, 837 (Ill. 1977) (concluding its transactional immunity statutory language was clear and unambiguous); *see also People v. Giokaris*, 611 N.E.2d 571, 573 (Ill. App. Ct. 1993). The Illinois Supreme Court noted that its statutes do "not provide in any manner for the transmutation of that transactional immunity into use immunity in prosecutions initiated under the local authority of another State's [a]ttorney." *Cruz*, 363 N.E.2d at 837. The court further stated:

> [T]he legislative failure to address this issue may have mischievous results when a grant of transactional immunity in one proceeding serves to wholly immunize a subject from prosecution in a second jurisdiction where the prosecutor may have completed the investigation and be ready to proceed to trial. However, where, as here, the statutory language is clear and unambiguous, there is no occasion for judicial construction. The statute's plain language must be given effect. Any correction of this result must come from the legislature.

*Id.*

Like Illinois, our statutes do not provide for use immunity. The State makes a reasonable policy argument that use immunity should be available where, as here, a defendant gives immunized testimony after pleading guilty but before sentencing. The problem is that Nevada's immunity statutes do not create this option. We are bound by their plain language and conclude that any correction of this result must come from the Legislature. Therefore, we conclude that the language of NRS 178.572 and NRS 178.574 clearly and unambiguously provides for a grant of transactional immunity. *See* NRS 178.572 ("on motion of the State may order . . . any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence the witness may be required to produce"); NRS 178.574 ("[s]uch order of immunity shall forever be a bar to prosecution against the witness for

any offense shown in whole or in part by such testimony or other evidence'').

Based on the foregoing, we conclude that NRS 178.572 and NRS 178.574 confer transactional immunity.[1]

*The district court properly granted the motion to dismiss and motion to withdraw guilty plea*

The State nonetheless argues that where a defendant has entered into plea negotiations, pleaded guilty, and made a written statement about the circumstances of the arrest, the plain language of the statutes dictate that the conduct to which he or she pleaded guilty is not immunized. We disagree.

NRS 178.572(1) contemplates immunity applying to future prosecutions and to an ongoing criminal prosecution where the defendant has already entered a guilty plea. Further, our reading of this statute's plain language suggests that the Legislature not only intended to preclude future charges, but also intended for immunity to apply through the entirety of a pending criminal prosecution. Specifically, NRS 178.572 states that a ''material witness [may] be released from all liability to be prosecuted *or punished* on account of any testimony . . . the witness may be required to produce'' (emphasis added). Since punishment necessarily occurs at sentencing and only after the entry of a guilty plea or a guilty verdict at a trial, we conclude that the Legislature's choice of adding the words ''or punished'' indicates its intent that immunity be extended to a pending prosecution even if the defendant has already pleaded or been found guilty.

Even without that language in the statute, our conclusion that the Nevada statutes confer transactional immunity would require dismissal of the State's case against a defendant who had pleaded guilty but had not yet been sentenced. Transactional immunity is an absolute bar against prosecution, *see* NRS 178.574 (''[s]uch order of immunity shall forever be a bar to prosecution''); *see also Kastigar*, 406 U.S. at 453 (explaining that transactional immunity ''accords full immunity from prosecution for the offense to which the compelled testimony relates''), and sentencing is an essential part of prosecution, *see* NRS 176.105 (providing that a judgment of conviction must include adjudication and the sentence); *Steinberger v. Dist. Ct. in & for Tenth Jud.*, 596 P.2d 755, 758 (Colo. 1979) (''A recital of the sentence is an essential part of a judgment

---

[1]Use and derivative use immunity also can be valid protections of a witness's rights, but only where the parties negotiate use and derivative use immunity in contractual, bargained-for situations. NRS 178.572 and NRS 178.574 therefore should not be construed to prohibit the State from offering, or a defendant from accepting, a less protective type of immunity in exchange for testimony as part of a guilty plea agreement.

of conviction.''). Regardless of whether a jury finds a defendant guilty or a defendant pleads guilty, that defendant's compelled testimony prior to sentencing could further incriminate that defendant or increase the severity of the sentence imposed.

Other courts have immunized a defendant from the imposition of a sentence in analogous circumstances. For example, in *State v. McCullough*, the Washington Court of Appeals stated that ''[t]he privilege against self-incrimination does not terminate upon a finding of guilt before the defendant has been sentenced.'' 744 P.2d 641, 643 (Wash. Ct. App. 1987) (citing *Steinberger*, 665 P.2d at 757). The court noted that, ''since the 'function and utility' of the immunity rule exists 'so long as a defendant's testimony might incriminate him or tend to subject him to additional penalties,' . . . the [immunity] rule must be applicable to a defendant . . . whose testimony is compelled before he is sentenced.'' *Id.* at 644 (internal citation omitted). The court reasoned that ''[e]ven after a conviction, the defendant may further incriminate himself by making statements which could affect the severity of the sentence to be imposed.'' *Id.* at 643-44.

Similarly, in *Steinberger v. District Court in & for Tenth Judicial District*, the Colorado Supreme Court held that when a defendant was granted immunity for testimony after being found guilty, but before sentencing, the defendant was immunized from being sentenced. 596 P.2d at 758. That court noted that even after being found guilty, a defendant's forced testimony containing incriminating statements could still influence a court to impose a harsher sentence than if the defendant did not testify. *Id.* at 757. This was true given that Colorado prosecutors have the option to speak before sentence is imposed and can notify the court of any aggravating factors it deems material, inclusive of the right to argue for a higher sentence based on any negative information learned during the course of the compelled testimony. *Id.* (citing Colo. Crim. P. 32(b)(1)). We conclude that the reasoning of these courts is sound, particularly because Nevada prosecutors possess the same right to present aggravating evidence at sentencing as do their Colorado counterparts.[2]

The justice court's order granting Tricas transactional immunity in exchange for her testimony barred the State from prosecuting or punishing Tricas for transactions discussed in the course of her compelled testimony. Since her own drug possession was a central

---

[2]We note that our analysis would not change where the State's right to argue at sentencing is restricted by virtue of a plea agreement, such as where the State agrees to make no recommendation or to not oppose a particular sentence. Regardless of whether the State chooses to bring to the sentencing court's attention negative inferences drawn from compelled testimony, the slightest chance that the sentencing judge could learn of the incriminating testimony from any source still increases the risk of a harsher punishment based on the defendant's compelled testimony.

topic of her compelled testimony, any charges relating to the drugs became ripe for dismissal, including the one to which she had already pleaded guilty and was awaiting sentencing. Because the district court could not impose a sentence given the immunity order and therefore could not enter a judgment of conviction consistent with the requirements of NRS 176.105, it did not abuse its discretion by allowing Tricas to withdraw her guilty plea and dismissing the charges against her. *See Crawford v. State*, 117 Nev. 718, 721, 30 P.3d 1123, 1125 (2001) (reviewing the district court's decision whether to grant a motion to withdraw a guilty plea for an abuse of discretion); *Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008) (reviewing the district court's decision to dismiss a count in a charging document for an abuse of discretion). Accordingly, we affirm the district court's order.

CHERRY, C.J., and DOUGLAS, SAITTA, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.