An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
GEORGE C. ARTHUR,
Respondent.

No. 62962

**FILED**

NOV 0 3 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

### *ORDER OF REVERSAL*

This is an appeal from an order of the district court granting a post-conviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Abbi Silver, Judge.

The State argues that the district court erred by granting relief on George Arthur's claims of ineffective assistance of counsel raised in his October 6, 2011, petition. To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but

SUPREME COURT
OF
NEVADA

(O) 1947A

14-36343

review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

The district court granted Arthur relief based upon three claims of ineffective assistance of trial counsel. The district court also concluded that the errors of counsel considered cumulatively amounted to ineffective assistance of counsel. Giving appropriate deference to the district court's factual findings, we conclude as a matter of law that the district court erred in granting relief.

First, the State argues that the district court erred in determining that Arthur's trial counsel were ineffective for failing to investigate and interview a State's witness, Lori Rios. The State endorsed Rios as a witness, but listed her contact information as unknown. At the evidentiary hearing, defense counsel testified that they discussed Rios with the State in an effort to ascertain whether they should pursue further investigation of her potential testimony and whether the State actually possessed her contact information. During that conversation, the State informed counsel that the State had only listed Rios as a witness out of an abundance of caution as she was a family member of the victim who resided in Las Vegas and possibly could have pertinent information about the crime. The State reiterated to defense counsel that it did not possess Rios' contact information and informed defense counsel that the State was not likely to present Rios' testimony at trial. Defense counsel also conferred with Arthur, who indicated that he did not believe that Rios had any pertinent information. Defense counsel testified that, as a result of the conversations with the State and Arthur, they did not pursue further investigation of Rios' potential testimony.

Rios, however, attended the trial and during a break, a prosecutor spoke with Rios and learned that approximately one month prior to the killing, Arthur had told her that God had sent him to kill the victim. Defense counsel objected to Rios' testimony due to the lack of contact information and the objection was overruled by the district court. Counsel then cross-examined Rios at length regarding her failure to disclose this information to the State or the police at any point prior to the trial. The State argued in closing that Rios' testimony, combined with the additional evidence presented at trial, demonstrated that Arthur acted with premeditation and did not kill the victim in self-defense.

The district court concluded that counsel was ineffective for failing to pursue further investigation of Rios and her potential testimony. The district court's order states that had counsel been aware that Arthur had told Rios that God wanted him to kill the victim, counsel would have been aware of Arthur's psychological difficulties and chosen to pursue a different defense. At the evidentiary hearing, the parties discussed the potential for an insanity defense based in part on Rios' testimony that Arthur was told to kill by God.

We conclude that the district court erred in concluding that counsel's performances were deficient. "[D]efense counsel has a duty 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *State v. Love*, 109 Nev. 1136, 1138, 865 P.2d 322, 323 (1993) (quoting *Strickland*, 466 U.S. at 691). Defense counsel's "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances." *Strickland*, 466 U.S. at 691. "Where counsel and the client in a criminal case clearly understand the evidence and the permutations of proof and outcome,

counsel is not required *to* unnecessarily exhaust all available public or private resources." *Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Here, defense counsel testified that they questioned the State regarding Rios' potential testimony and her contact information and relied upon the State's assertions that Rios was unlikely to testify as the State did not know at that time the value of Rios' testimony or how to contact her. Arthur also told them that he did not believe that Rios knew any important information. In addition, counsel testified that Arthur was adamant that he acted in self-defense. Given the representations by the State and Arthur, counsel chose not to spend additional time and resources investigating a witness who, given the information known to counsel before the start of trial, did not appear to possess helpful or pertinent information. Tactical decisions made by counsel, such as which witnesses to interview or investigate, "are virtually unchallengeable absent extraordinary circumstances." *Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989). Under these circumstances, defense counsel's decision to not spend time and effort on investigating a witness for whom the State did not possess contact information, that the State did not intend to call at trial, and that the defendant did not believe had useful information was an objectively reasonable decision.

The district court also erred in concluding that Arthur was prejudiced by the failure to investigate Rios as her testimony regarding Arthur's statement about God telling him to kill the victim would not have supported an insanity defense.[1] "To be legally insane, a defendant must

---

[1]The parties and the district court also discussed the possibility of a diminished capacity defense based upon mental health issues, but

*continued on next page . . .*

be in a delusional state preventing him from knowing or understanding the nature of his act or from appreciating the wrongfulness of his act." *Blake v. State*, 121 Nev. 779, 793, 121 P.3d 567, 576 (2005); *see also* NRS 174.035(5) (codifying Nevada's standard for legal insanity). Nevada's legal insanity standard

> permits a finding of legal insanity only if at the time of the killing, a delusional state: (1) rendered the defendant incapable of knowing or understanding the nature of his act, *i.e.*, that he was killing a human being, or (2) prevented the defendant from appreciating the wrongfulness of his act, *i.e.*, that the killing was not justified under the law.

*Blake*, 121 Nev. at 801-02, 121 P.3d at 581 (Becker, C.J., concurring in part and dissenting in part). Arthur's statement to Rios that God sent him to kill the victim does not meet either requirement for insanity. It did not demonstrate that Arthur was rendered incapable of knowing the nature of his act as he specifically stated he was sent to kill a human being. It also did not demonstrate that Arthur did not appreciate the wrongfulness of his act or that the killing was not justified under the law. Arthur's statement best fits under the irresistible impulse test for legal insanity, a standard specifically not adopted by Nevada. *See Finger v. State*, 117 Nev. 548, 558, 27 P.3d 66, 73 (2001). Moreover, this court has already concluded that a scenario similar to the one presented in this case, one where a criminal defendant believed that God wanted him to kill and

---

*. . . continued*

acknowledged that Nevada does not recognize such a legal defense. *See Crawford v. State*, 121 Nev. 744, 757, 121 P.3d 582, 590-91 (2005).

acted under that impulse, would not meet Nevada's legal insanity standard. *See id.* Accordingly, the district court erred in concluding that there is a reasonable probability of a different outcome at trial had counsel investigated Rios.

Second, the State argues that the district court erred in determining that Arthur's trial counsel were ineffective for failing to investigate Arthur's mental health prior to trial. In support of this claim, Arthur produced documents stemming from his pretrial confinement in the Clark County Detention Center that briefly discuss his treatment for mental health issues. The district court concluded that counsel were ineffective for failing to obtain Arthur's jail records, which would have revealed that Arthur had mental health issues, and that such revelation would have prompted counsel to pursue a different defense. At the evidentiary hearing, the parties discussed the potential for an insanity defense based in part on the jail records.

We conclude that the district court erred in concluding that counsel's performances were deficient. At the evidentiary hearing, counsel discussed their pretrial investigation and decisions concerning self-defense in this case. First, the lead counsel testified that he makes a case-by-case consideration of whether to request records from the jail. Counsel stated that his experience is that whenever defense attorneys request records pertaining to a client from the jail, the jail sends a copy of those records to the State and that such records often contain information damaging to the defense. Counsel testified that such concerns would have been why he did not request Arthur's records from the Clark County Detention Center. Second, counsel testified that Arthur was adamant that he killed the

SUPREME COURT
OF
NEVADA

(O) 1947A

victim in self-defense and counsel pursued investigations aimed at helping that defense.

As discussed previously, defense counsel has a duty to make reasonable investigations or make a reasonable decision not to undertake a particular course of investigation. *Love*, 109 Nev. at 1138, 865 P.2d at 323. Here, counsel made a reasonable tactical decision regarding the direction of the pretrial investigation based on his experience and upon the circumstances known to him in this case. Tactical decisions made by counsel, such as the decision not to obtain jail records, "are virtually unchallengeable absent extraordinary circumstances," *Ford*, 105 Nev. at 853, 784 P.2d at 953, and Arthur does not demonstrate extraordinary circumstances here.

Counsel also reasonably declined to investigate facts to support an insanity defense. As stated previously, defense counsel testified that Arthur was adamant that the killing was done in self-defense. Counsel testified that they both met with Arthur prior to trial and had no indication from him that he suffered from any delusion during the commission of the killing such that they should have pursued an insanity defense. This is particularly important in light of this court's conclusion that a criminal defendant personally, and not his or her counsel, has the authority to pursue a defense of insanity. *See Johnson v. State*, 117 Nev. 153, 163, 17 P.3d 1008, 1015 (2001). Moreover, where there is no indication pretrial that a criminal defendant suffered from psychological disorders that may have impaired his mental state at the time of the crime, counsel is not ineffective for declining to investigate the defendant's mental health. *See Riley v. State*, 110 Nev. 638, 650-51, 878 P.2d 272, 280 (1994); *see also Dumas v. State*, 111 Nev. 1270, 1272, 903

P.2d 816, 817 (1995) (explaining that the circumstances in that case should have caused counsel to investigate the defendant's mental health, but recognizing that defense counsel may have "cogent reasons for not pursuing the defendant's psychopathy"). Under the circumstances of this case, the pursuit of facts to support Arthur's statements that the killing was done in self-defense was a reasonable tactical decision given the facts known to counsel and Arthur's assertion that he acted in self-defense. *See Ford*, 105 Nev. at 853, 784 P.2d at 953; *see also Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions").

The district court also erred in concluding that Arthur was prejudiced by trial counsel's failure to investigate Arthur's mental health prior to trial. Arthur had the burden of proving the factual allegations underlying his ineffective-assistance-of-counsel claims by a preponderance of the evidence. *See Means v. State*, 120 Nev. 1001, 1012 103 P.3d 25, 33 (2004). In support of this claim, Arthur provided the previously mentioned jail records that briefly discussed Arthur's diagnoses and medications. Arthur also provided Nevada Department of Corrections inmate request forms where he had requested information regarding his medication and diagnoses. However, Arthur did not present expert testimony regarding his mental health at the evidentiary hearing. The district court did not make specific findings about Arthur's proof regarding mental health difficulties, but stated in its order and at the evidentiary hearing that had counsel obtained the jail records, counsel may have pursued a different defense at trial, such as an insanity defense.

Arthur's jail and prison documents fail to demonstrate by a preponderance of the evidence that during the killing he was "in a

delusional state preventing him from knowing or understanding the nature of his act or from appreciating the wrongfulness of his act." *Blake*, 121 Nev. at 793, 121 P.3d at 576. None of the records provided by Arthur on post-conviction discuss in any detail his mental difficulties or provide any information regarding whether Arthur actually acted in a delusional state during the killing. *See Miller v. State*, 112 Nev. 168, 172, 911 P.2d 1183, 1185 (1996) (stating "a successful insanity defense must show the elements of [legal insanity] existed *at the time of the act*" (emphasis in original)). The general and brief information produced by Arthur simply fails to demonstrate a reasonable probability that a jury would have found Arthur not guilty by reason of insanity had counsel obtained this information. To the extent that the jail records could have prompted further investigation into Arthur's mental health, the record is silent as to what counsel could have discovered, if anything. Arthur has not addressed the type or quality of mental health evidence his counsel could have uncovered with more investigation, and therefore, he fails to demonstrate a reasonable probability of a different outcome had counsel conducted further investigation into his mental health. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). Therefore, the district court erred in granting relief on this claim.

Third, the State argues that the district court erred in determining that Arthur's trial counsel were ineffective for failing to investigate the victim's violent background. Evidence presented at the evidentiary hearing demonstrated that the victim had been arrested approximately 20 years prior to his death for battery, that the defense knew of this arrest, but that the defense did not present this evidence during the trial because the trial court had informed them in an off-the-

record discussion that it would permit the State to introduce Arthur's violent background if they sought admission of this evidence. Evidence presented at the evidentiary hearing also indicated that Arthur had been aware of the victim's arrest prior to the night of the killing. The district court concluded that counsel were ineffective for failing to investigate the victim's violent background and for failing to ensure that the trial court's ruling on this evidence was placed on the record so as to be preserved for direct appeal.

We conclude that the district court erred in concluding that counsel's performances were deficient. The record belies Arthur's claim that counsel did not investigate the victim's violent background. At the evidentiary hearing, counsel testified that they investigated the victim's criminal history and the defense knew that the victim had been arrested for battery. Counsel also testified that the trial court's ruling essentially tied their hands. They knew of Arthur's criminal history, which was much more recent and much more significant than the victim's history. Counsel in particular did not want the jury to hear about Arthur's domestic violence towards Arthur's common-law wife, the victim's step-daughter. Accordingly, counsel made a tactical decision not to seek admission of the victim's use of violence in an attempt to shield from the jury Arthur's past violent conduct. Under the circumstances of this case and the given the ruling made by the trial court, these were reasonable tactical decisions. *Ford*, 105 Nev. at 853, 784 P.2d at 953. Therefore, the district court erred in concluding that counsel were not reasonably diligent with respect to use of evidence pertaining to the victim's violent background.

The district court also erred in concluding that Arthur was prejudiced by the failure to investigate the victim's violent background



and for failing to challenge the trial court's ruling with respect to introduction of this evidence. As stated previously, defense counsel knew of the victim's arrest for battery and Arthur does not demonstrate that there were any additional violent incidents involving the victim that could have been discovered. *See Molina*, 120 Nev. at 192, 87 P.3d at 538. Had counsel sought to introduce evidence of the victim's battery arrest, Arthur does not demonstrate that there was a reasonable probability of a different outcome at trial. The victim's use of violence was remote and not likely to have held much persuasive weight given that the charge did not result in a conviction. In contrast, the evidence demonstrating Arthur's guilt was strong.

Evidence produced at trial demonstrated that Arthur was not welcome inside of his estranged wife's home due to his alcoholism and that the victim had initiated those restrictions. Arthur talked to his estranged wife on the night of the murder and she testified that Arthur was angry at the victim due to an earlier phone call between the two. The evidence demonstrated that Arthur went to the victim's house while the rest of the family was out, that the victim suffered multiple and significant stab wounds to his head, back and neck, and that the victim had extensive defensive wounds. The assailant had attempted to clean the scene following the incident and Arthur's blood was discovered throughout the crime scene. Arthur then took the victim's car, left it a short distance from the house, and left the area in his own vehicle. The next day, Arthur met with an acquaintance and told that person that he had been in an altercation at a casino with two African Americans the night before. A few days later, police officers initiated a traffic stop of Arthur, but he led them on a high speed chase of approximately 40 miles with speeds exceeding

 

100 mph. After his arrest, Arthur was recorded telling his estranged wife that he had had nothing to do with her step-father's death, but asserted that he acted in self-defense at trial.

In light of the evidence of Arthur's guilt, the victim's 20-year-old battery arrest that did not result in a conviction had little probative value in determining the events of the night in question. Accordingly, Arthur does not demonstrate prejudice stemming from counsel's actions or inactions regarding the victim's battery arrest. Therefore, the district court erred in granting relief on this claim.

Finally, the State argues that the district court erred in determining that the cumulative errors of counsel amounted to ineffective assistance of counsel. As discussed previously, we conclude that Arthur did not meet his burden below to demonstrate that his trial counsel's performances were deficient. Therefore, there are no claims of counsel error to consider cumulatively and Arthur was not entitled to relief for this claim.

For the reasons set forth in this order, we

ORDER the judgment of the district court REVERSED.

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Abbi Silver, District Judge
Attorney General/Carson City
Clark County District Attorney
Christopher R. Oram
Eighth District Court Clerk

